```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


----------------------------X
                            :
DAVID KRETZMER,             :
                            :    13-CV-3060 (ENV)(LB)
            Plaintiff,      :
                            :    July 24, 2013
                            :
            V.              :    Brooklyn, New York
                            :
JACK LEFKOWITZ, et al.,     :
                            :
            Defendant.   :
----------------------------X
```

```
      TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
             BEFORE THE HONORABLE LOIS BLOOM
              UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiff:          SOLOMON ANTAR, ESQ.
                            LEOPOLD GROSS, ESQ.



For the Defendant:          MICHAEL MILLER, ESQ.


Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Civil cause for initial

2  conference, docket number 13-CV-3060, Kretzmer v.

3  Lefkowitz, et al.

4          Would the parties please state your names

5  for the record?

6          MR. ANTAR:  Solomon Antar and Leopold Gross

7  for the plaintiff.

8          MR. MILLER:  Michael Miller on behalf of the

9  Lefkowitz defendants.

10          THE CLERK:  The Honorable Lois Bloom

11  presiding.

12          THE COURT:  Good afternoon, Mr. Antar, Mr.

13  Gross and Mr. Miller.  Please be seated.

14          MR. ANTAR:  Good afternoon, your Honor.

15  Your Honor, Mr. Gross would like me to ask you if he

16  would be able to address the Court partially on this

17  matter.  He's going to be admitted in about another

18  week or so.

19          THE COURT:  So you're making an application

20  that he be able to address the Court although he's not

21  admitted here for today?

22          MR. ANTAR:  Yes.

23          THE COURT:  Your application is granted, Mr.

24  Gross, but you will have to file a notice of appearance

25  as soon as you are admitted in the district.

1           MR. GROSS:  Thank you, your Honor.

2           MR. ANTAR:  Thank you.

3           THE COURT:  This is the initial pretrial

4    conference in plaintiff's action to recovery $3,590,000

5    in funds, which were allegedly stolen by defendants,

6    and treble damages in the amount of $9,000,000 plus

7    attorneys' fees and costs stemming from what plaintiffs

8    allege are defendants' civil RICO violations.

9    Plaintiff also brings various common-law claims against

10   defendants, including fraud, fraud in the inducement,

11   conversion and unjust enrichment.

12           Plaintiff not only seeks judgment against

13   the corporate defendants but asks the Court to pierce

14   the corporate veil and hold the individual defendants

15   personally liable.  Plaintiff also requests the Court

16   to appoint a receiver to prevent dissipation of

17   defendants' assets during the pendency of the

18   litigation.

19           I have to say that I have reviewed all of

20   the papers and I have no idea who David Kretzmer is.

21   And although he says that he's the assignee of the

22   attorneys in fact of Tibor Steinberger, who is since

23   deceased, I have no idea who he is and I have no idea

24   how he has standing to bring the case.

25           MR. ANTAR:  Well, we didn't realize that at

1   this time, we'd have to produce those documents but we

2   can very well --

3                THE COURT:  What are the documents that

4   you're saying --

5                MR. ANTAR:  The documents are the assignment

6   and the power of attorney.

7                THE COURT:  Assignment of what, sir?  Power

8   of attorney gets you nowhere; it doesn't give you

9   standing.  Power of attorney does not give you the

10   title or ownership of the proceeds.

11                MR. ANTAR:  When Mr. Steinberger was alive,

12   he gave Mr. Kretzmer a power of attorney --

13                Do you want to address that?  You have the

14   documents with you.  Do you have any documents?

15                MR. GROSS:  I can do it.  I have a document.

16                MR. ANTAR:  Okay.

17                May he address it, your Honor?

18                THE COURT:  I already gave him permission,

19   whoever wants to address it.

20                MR. ANTAR:  Thank you.

21                MR. GROSS:  Good morning, your Honor.  When

22   Tibor Steinberger was alive, he executed a power of

23   attorney for four individuals, his son-in-law, a person

24   by the name of Bernie Klein and Mr. Kretzmer and Mr.

25   Sachs, to dispose of his assets.  These individuals,

1  pursuant to a power of attorney, have a assigned the

2  cause of action, this particular cause of action to Mr.

3  Kretzmer.  Mr. Kretzmer is an attorney.  He's a member

4  of the Bar of this Court as well as the Bar of Israel

5  and the Bar of South Africa.  And that's what gives us

6  standing because an assignment of the claim was made

7  through a power of attorney while Mr. Steinberger was

8  alive.

9          THE COURT:  Have you read case law on point?

10 There's a plethora of case law in the Second Circuit

11 that explicitly says that a mere power of attorney does

12 not confer standing to sue in the holder's own right

13 because a power of attorney does not confer an

14 ownership interest in the claim.

15         MR. GROSS:  Agreed, your Honor.  We're not

16 suing pursuant to a power of attorney.  The individuals

17 with the power of attorney have already assigned the

18 cause of action.  We're suing on an assignment, on an

19 assignment.  It's a fully, complete assigned cause of

20 action for Mr. Kretzmer while --

21         THE COURT:  Assignment of what?

22         MR. GROSS:  Of the causes of action.  I

23 don't know if we have the documents here but they

24 assigned the cause of action to pursue against Mr. --

25         THE COURT:  Was there legal title or

```
 1  ownership of whatever it is that you're saying that Mr.
 2  Steinberger owned?
 3            MR. GROSS:  Absolutely, your Honor, yes.
 4            THE COURT:  What did Mr. Steinberger own?
 5            MR. GROSS:  The cause of action.
 6            THE COURT:  What's the cause of action?
 7            MR. GROSS:  A fraud, unjust enrichment,
 8  returns of proceeds.  Mr. Steinberger actually advanced
 9  $3,000,000 to the defendants in this case, and the
10  cause of action for return of the money is --
11            THE COURT:  How come the son-in-law is not
12  pursuing it?  Again, I have nothing, not a thing that
13  tells me that you have a right to pursue this action.
14  I have Kretzmer as attorney in fact of Tibor
15  Steinberger, who is since dead.  That's what I have as
16  the allegation.  And in fact, because this is being
17  brought as a diversity claim and the defendants are
18  alleging that you're doing that to get out of the
19  problem that, if it was actually Steinberger --
20  Steinberg is of the same citizenship as Lefkowitz and
21  there would be no basis for diversity.
22            MR. GROSS:  That's not the case, your Honor.
23  Mr. Steinberger is a citizen of England.  He's a London
24  citizen.  Mr. Kretzmer --
25            THE COURT:  Mr. Steinberger no longer
```

1 exists.

2        MR. GROSS:  But Mr. Kretzmer --

3        THE COURT:  So where is his estate?  What is

4 the status of Mr. Steinberger's estate?

5        MR. GROSS:  He left the world and it's in

6 the process of being probated in London, in England.

7        THE COURT:  So why wouldn't the Court have

8 to wait until the probate had come to fruition and that

9 there were letters showing how the estate was going to

10 handle whatever this matter is all about?

11        MR. GROSS:  Because we're suing pursuant to

12 an assignment.

13        THE COURT:  Which you did not put into your

14 papers.

15        MR. GROSS:  We did not put it into the

16 papers but we represent the Court that we're suing

17 pursuant to an assignment.  Mr. Kretzmer has full

18 rights and ownership to the causes of action because it

19 was assigned to him.

20        THE COURT:  Look, this is the problem:  The

21 Court works on the papers that are presented.  I'm not

22 a mind reader, Judge Vitaliano is not a mind reader,

23 okay?  You're telling me that you know what the law is

24 and that there is standing, and that there is no

25 problem with diversity.  And I'm telling you, in

1  looking through these papers, those are the problems

2  that pop up right away to me because I only have what

3  you gave me.

4        MR. GROSS:  We believe that the complaint

5  alleges and states the residence of Mr. Kretzmer, the

6  plaintiff, in the State of Israel, Mr. Tibor

7  Steinberger --

8        THE COURT:  Kretzmer means nothing to me

9  because you've only said that he's the attorney in fact

10 of Tibor Steinberger, and I have no idea who Kretzmer

11 is and I don't care that he's from Israel because,

12 again, unless you establish that he has standing to

13 bring the case, and it's unclear from your papers.

14 When you say that plaintiff is the assignee, I'm afraid

15 that Steinberger sold the lawsuit to plaintiff before

16 he died.

17        MR. GROSS:  That is indeed correct.

18        THE COURT:  And that is indeed correct, and

19 that is indeed illegal.

20        MR. GROSS:  He assigned it.

21        MR. ANTAR:  He assigned it.

22        THE COURT:  But you just said he sold it.

23        MR. GROSS:  I didn't pay attention to your

24 Honor's language.

25        THE COURT:  Sir, you're talking to the

1  federal court.  And even though you're about to be

2  admitted, your words count.

3         MR. GROSS:  Let me see if I have the

4  assignment here.

5         MR. ANTAR:  May I, your Honor?

6         THE COURT:  You handed it off to Mr. Gross.

7  You're taking it back from Mr. Gross?

8         MR. ANTAR:  He's more familiar with the

9  assignment, and I believe he has a copy of it over

10  here.

11         THE COURT:  I asked specifically whether

12  Steinberger sold the lawsuit to plaintiff before he

13  died.  He answered yes.

14         MR. ANTAR:  He did not sell it.  He did not

15  sell it.  What he did -- he gave these four people a

16  power of attorney to go after, for his benefit and the

17  benefit of his children, to go after the debt that was

18  owed to them.

19         THE COURT:  The power of attorney does not

20  convey standing.

21         MR. ANTAR:  It gave him the right to do it.

22         THE COURT:  The power of attorney does

23  nothing to convey standing.

24         MR. ANTAR:  Before -- however, while he was

25  alive, they assigned it.  We'd have to lay out the

1    documents, and I did not believe that it's proper to

2    lay out all of these documents in a complaint.  I made

3    a statement in the complaint and verified the

4    complaint.

5             THE COURT:  Again, the Court is not a mind

6    reader.  When you say plaintiff is David Kretzmer,

7    assignee is the attorney in fact, Tibor Steinberger has

8    since deceased, that means nothing to me.

9             MR. GROSS:  I don't have it.

10            MR. ANTAR:  You don't have it.

11            THE COURT:  And when you're talking about

12   millions of dollars, not pleading in a way that gives

13   the Court notice what the basis for standing is, which

14   is one of the essential elements for federal courts to

15   have jurisdiction -- you cannot have a case in court --

16   there's no subject matter jurisdiction if the plaintiff

17   lacks standing.

18            MR. ANTAR:  I don't believe that it can be

19   determined that the plaintiff lacks standing from the

20   complaint alone.  They would have to -- we would have

21   to delve into it a little further, so we can produce

22   these documents.

23            THE COURT:  What I'm saying, Mr. Antar, is

24   that these are the issues that raise the red flag for

25   the Court, because before the Court can move a case

1  forward, they have to be assured that they have

2  jurisdiction.  If there's no standing to pursue the

3  claim, there's no jurisdiction.  You want a chance to

4  replead your complaint, I'll give you a chance to

5  replead your complaint.  But your letters to the Court

6  are complaining about the defendants dragging their

7  feet and trying to make this drag on, and quite

8  frankly, the Court can't do a thing unless we are

9  assured that there's jurisdiction.

10          And when I got the letter which was saying

11  that any motion at this early juncture will only place

12  us well into the months of September and October -- I'm

13  sorry to say, it may be later than that.

14          MR. ANTAR:  Yes, it would.

15          THE COURT:  And that's not -- it's not the

16  Court's fault.

17          MR. ANTAR:  No.

18          THE COURT:  You come when you come to the

19  Court.  We didn't tell you when you file the case.  The

20  case was filed May 24th.

21          MR. ANTAR:  We'll be happy to replead and

22  put all of the documents in.

23          THE COURT:  Until the Court is assured that

24  there's standing --

25          MR. ANTAR:  Yes.

```
1              THE COURT:  And I do think that there is an

2    issue of whether or not Steinberger sold the lawsuit.

3    Again, you don't want anybody to be making any

4    allegations that are going to have repercussions for

5    them.  You are making sworn statements in federal

6    court.

7              MR. ANTAR:  Yes.  Yes, I realize that.

8              THE COURT:  I did ask that defendants'

9    attorney produce the alleged agreement, which I believe

10   was done because it was filed with the Court as well.

11   So on that issue, at least you've gotten that much

12   information.  And of course, they're saying if you do

13   get past what they're saying are problems with the

14   complaint, because they've asked for a pre-motion

15   conference.  They're talking about arbitration, that

16   the agreement says that there's going to be an

17   arbitration in the beth din of Monsey, New York.

18              Again, that's an issue.  There's the

19   standing issue, which I've raised to you.  There's the

20   diversity issue, which I've raised to you.  I haven't

21   even touched on the failure to state a claim issue,

22   which goes to the fraud, the RICO, the statute of

23   limitations.  Those are all things that are going to be

24   raised.

25              But, again, if you don't make the Court
```

1   confident that there is standing, that you have legal

2   title, legal title to pursue the claim, not just power

3   of attorney, then you have to alleged to title to or

4   ownership of the claim.  And if you have documents to

5   show that, then that would probably be a good thing to

6   include in the complaint.  Then it's part of the

7   pleading.

8           MR. ANTAR:  Yes, your Honor.

9           THE COURT:  How much time do you want, Mr.

10   Antar?

11           MR. ANTAR:  Two weeks?

12           THE COURT:  That sounds reasonable.

13           MR. GROSS:  Fine, your Honor.

14           THE COURT:  So that puts us to the 9th.

15   That's two weeks from Friday.  Would that work for you,

16   Mr. Antar?

17           MR. ANTAR:  Yes.

18           THE COURT:  Okay, so 8/9/13 to replead.

19           Then, Mr. Miller, if you're going to still

20   request, then you go back to Judge Vitaliano under his

21   pre-motion conference request rules.

22           MR. MILLER:  Thank you.

23           THE COURT:  Because I believe that once the

24   standing issue is resolved, you're still going to be

25   making issues -- I don't know what -- you're telling me

1   for the first time you have papers, you'll include

2   papers.  I take you at your word but the case law is

3   clear that unless the Court has standing, then there's

4   nothing that the Court can do further.  After that, the

5   issues of diversity, the statute of limitations, the

6   fraud has to be plead with specificity under 9(b).

7   RICO claims are incredibly difficult, even for the U.S.

8   attorney's office to plead.

9            So I bring it to your attention that all of

10  those portions of your complaint that they've already

11  identified -- but most importantly, the standing issue

12  on the ownership interest in the action.  And I'll give

13  you those two weeks that you've requested to replead.

14            I don't know what they're going to say on

15  standing.  Do you believe that it's likely, Mr. Miller,

16  that your client is still going to assert the same

17  request to make a motion to dismiss?

18            MR. MILLER:  Your Honor, on the standing

19  issue, I think it will depend on whether the theory is

20  one of power of attorney, whether it's

21  representational, whether it's assignment.  So I think

22  it depends.  I don't feel any closer to knowing what

23  that's going to be, so there may be a standing issue.

24            Your Honor, I have to say, I smiled when you

25  mentioned champerty, only because I was familiar with

1  the statute and have brought those motions in the past.

2  I don't think a sale or an assignment makes much

3  difference.  It's a sale for the purposes of bringing

4  litigation.

5       THE COURT:  I'm not going to answer any of

6  these questions.  I'm giving plaintiffs their chance to

7  amend, to put in their papers.  What I'm trying to do

8  here is see whether or not it makes sense to eliminate

9  one more step, to set a motion schedule today because

10 they're going to be giving their papers.  I've

11 identified to them what I saw as the number one issue.

12 Once they replead, it may be a completely different

13 ball game because maybe all of those questions will be

14 satisfied by the new papers.

15       But the other issues that I told you -- 9(b)

16 of the Federal Rules require that broad claims be

17 pleaded with specificity.  They're making the claim in

18 their pre-motion conference request that you failed to

19 do that.  Likewise, with RICO, you have to allege that

20 there's an enterprise.  You've recited the elements of

21 RICO but that wouldn't be sufficient.  Statute of

22 limitations -- the dates that are given in the present

23 complaint are 2007.  That would make most of your

24 claims untimely because the statute of limitations

25 begins to run when plaintiff discovers or should have

1   discovered the RICO injury.

2          New York law has a longer -- it has a six-

3   year statute of limitations for breach of fiduciary

4   duty or fraud claims.  But, again, now that you've been

5   given their agreement, you said that you had no

6   knowledge of an arbitration agreement, now you see that

7   there is, at least in the operating agreements that

8   were, they say, executed in connection with a potential

9   investment in Care and Maimonides.

10         So when you say potential investments, did

11  he invest or didn't he invest?

12         MR. MILLER:  Your Honor, it's unclear -- by

13  the way, this agreement covers Maimonides but not Care

14  to Care.  It's unclear whether any investment was

15  actually made, as the parties' course of dealing went

16  forward.  We just haven't finished our factual

17  investigation.

18         THE COURT:  How could you not know if any

19  investment was made?

20         MR. MILLER:  Your Honor, one of the things

21  we're trying to track down, I think collectively with

22  Mr. Antar, is what assets are in the estate.  We're

23  just having a little bit of trouble finding documents.

24         THE COURT:  I don't care about the estate.

25  How could your clients not know whether or not this was

1   actually a consummated deal?

2            MR. MILLER:  Only because we don't have the

3   2007 documents yet.

4            THE COURT:  Why don't you have the 2007

5   documents?

6            MR. MILLER:  Simply because I understand

7   that they weren't on site and they're being obtained.

8            THE COURT:  Mr. Miller, that's a little bit

9   shady for me.

10           MR. MILLER:  With the uncertainty, I don't

11  want to make any representations as to what the

12  parties' course of dealing was at the time.  It was

13  complicated and I could be --

14           THE COURT:  You found an operating

15  agreement.

16           MR. MILLER:  Yes.

17           THE COURT:  So how do you have that from

18  November of 2007 and nothing else?

19           MR. MILLER:  I don't really have any answer

20  to that question other than that was a document that

21  was more readily available.

22           THE COURT:  This is one fine mess.  I'm

23  going to schedule the amended complaint within two

24  weeks and I'm going to tell you to make your request

25  back to Judge Vitaliano within two weeks of their

1  repleading, so that's by the 23rd.

2         If they're going to make a request, at least

3  you should confer on dates, because if Judge Vitaliano

4  doesn't feel that he needs to call you in, it may save

5  all of you time.  If they're going to test your

6  pleadings by making a motion, you should at least agree

7  upon a schedule, okay?

8         MR. ANTAR:  Yes.

9         THE COURT:  And to the extent, Mr. Miller,

10 your clients are still looking for documents regarding

11 what was a potential investment made by Tibor

12 Steinberger, the individually named defendants, Jack

13 and Bluma Lefkowitz, the codefendant Maskil El-Dal, the

14 Care to Care and Maimonides and Medscan should all be

15 put on notice to preserve any documents and to produce

16 any documents regarding any investment by Tibor

17 Steinberger.  They produced a check, so that should

18 Brooklyn tracked down through a bank.

19        MR. MILLER:  There's a produced check?

20        MR. ANTAR:  We haven't produced.  We've

21 alleged where the money went, where money was

22 transferred to banks abroad.

23        MR. MILLER:  That has been -- one thing if I

24 could just note, your Honor, just to put plaintiffs on

25 notice.  I don't think Care to Care has been served

1  yet.  There is a docket entry that actually says notice

2  of service Care to Care.

3           THE COURT:  Let me look.

4           MR. MILLER:  The document underlying that is

5  the notice of service on Maimonides.  My understanding

6  from Care to Care is they just haven't been served.

7  I'm just raising that to be fair.

8           THE COURT:  I'm glad that you did raise

9  that.  That is an issue for you to attend to --

10          MR. ANTAR:  Yes.

11          THE COURT:  -- because you're going to have

12  to serve the original complaint and the summons on Care

13  to Care before any amendment is served on any counsel.

14          Mr. Miller, are you under -- do you believe

15  that you're going to be representing Care to Care?

16          MR. MILLER:  Right now, I think not.  That's

17  a separate entity.

18          THE COURT:  I'm trying to locate it on the

19  docket sheet.

20          MR. MILLER:  I want to say it's docket entry

21  3.  I could be wrong about that.  It says Care to Care

22  in the docket tag but the document is just --

23          MR. ANTAR:  Care to Care is a corporation.

24          MR. MILLER:  LLC.

25          MR. ANTAR:  LLC.  The Secretary of State

1  would serve them.

2              MR. MILLER:  I just don't think it was.

3              MR. ANTAR:  Okay.

4              MR. MILLER:  I think it was just an

5  oversight.

6              MR. ANTAR:  We'll check into it.

7              THE COURT:  You're going to have to have the

8  proof of service --

9              MR. ANTAR:  Yes.

10             THE COURT:  -- put on to the docket.  Look

11  into it before the time elapses.  I'm giving you until

12  August 9th to serve an amended complaint.  You cannot

13  serve an amended complaint on the unserved, if they are

14  unserved, Care to Care without a summons.  You still

15  need to get a summons issued.  After the amended

16  complaint is filed, if the time on the original summons

17  -- you should still have time.  It's 120 days from the

18  filing of the complaint to serve, so the original

19  summons should still have time left.

20             If you haven't already gotten proof of

21  service on Care to Care, take care of getting them

22  served, whether it be with the original or the amended

23  complaint, but do serve them with a summons and

24  complaint and then get proof of service filed.  And by

25  the 23rd, the defendants who have been served -- you

1   only need to serve Mr. Miller for those defendants --

2   will make any request to Judge Vitaliano and include a

3   schedule that's been discussed, if they're going to

4   make a motion.  Give Mr. Antar and Mr. Gross the

5   courtesy of agreeing to a schedule and putting that in

6   the letter to Judge Vitaliano.

7            MR. MILLER:  We will, your Honor.

8            THE COURT:  Is there anything further, Mr.

9   Antar, before we adjourn?

10           MR. ANTAR:  Nothing further, your Honor.

11           THE COURT:  Anything further on behalf of

12  defendants who have been served, Mr. Miller?

13           MR. MILLER:  No, your Honor.

14           THE COURT:  Then this matter is adjourned

15  and I'll put out a minute order.

16           MR. ANTAR:  Thank you.

17           THE COURT:  Thank you.

18                * * * * * * * * *

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                        August 2, 2013