# UNITED STATES DISTRICT COURT

## FOR THE

## EASTERN DISTRICT OF NEW YORK

---

DAVID KRETZMER, as Assignee of
TIBOR STEINBERGER,

Plaintiff,

- against -

JACK LEFKOWITZ, BLUMA LEFKOWITZ,
MASKIL EL-DAL, INC., CARE TO CARE
MANAGEMENT, LLC, MAIMONIDES
MEDICAL SERVICES, LLC, MEDSCAN
MOBILE, and "JOHN DOES" 1 through 10,
names being fictitious and intended to be the
person, persons or entities serving as the
nominees or alter egos of the defendants and
in possession of plaintiff's property that is the
subject of this action.

Defendants.

**Civil Action File No.**
13-CIV- 3060 (ENV) (LB)

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND
(18 U.S.C §§ 1961-1968
RICO)**

---

The Plaintiff, DAVID KRETZMER, as Assignee of TIBOR

STEINBERGER, by and through his attorneys, LAW OFFICES OF

SOLOMON E. ANTAR, and as and for his causes of action, respectfully

shows to this Court and alleges as follows:

## NATURE OF THE CASE

1.      This is an action brought to recover monies stolen from TIBOR STEINBERGER (sometimes hereinafter referred as "STEINBERGER" or the "Decedent") during his lifetime.   The monies stemmed from the proceeds of the sale of a parcel of real estate by STEINBERGER, that had originally been retained after the closing in the IOLA trust account of BERNARD SHAFRAN, ESQ., of FRENKEL, HIRSHKOWITZ & SHAFRAN, LLP, 16 East 34th Street, New York, NY 10016, the attorneys for the purchaser.   Those funds were subsequently embezzled by JACK LEFKOWITZ and the Defendants who illegally diverted them from the attorney's escrow account to their own personal bank accounts through pretense, fraud and deceit, and by using a fraudulent and bogus investment scheme as a vehicle to accomplish their ends.

2.     The Decedent, TIBOR STEINBERGER, and the Defendant, JACK LEFKOWITZ, were close friends; they knew and socialized with each other from an exceptionally close-knit and extraordinarily insular religious community of which they are both members.  Over the years, there developed a relationship of friendship and unreserved and unconditional trust between them whereby STEINBERGER, a foreign citizen who was unable to maintain a hands-on management of his affairs in the United States, relied upon the advice, guidance, and assistance of his friend JACK LEFKOWITZ in making and managing various investments in real estate and mortgages in this country.

3.     That, on or about November 11, 2007, STEINBERGER, in reliance upon his trust in the Defendant JACK LEFKOWITZ, was fraudulently induced to give his written consent to part with his money in reliance upon the intentionally false statements and purposeful misrepresentations of the said Defendant who, together with his wife BLUMA LEFKOWITZ, wrongfully took possession of, embezzled, purloined, and converted those funds to their own individual and personal

use; and, thereafter, by covering up their actions in depositing the funds abroad in their secret, numbered bank accounts.

4. The Plaintiff, DAVID KRETZMER, is the Assignee of TIBOR STEINBERGER. He is acting in the shoes of the Decedent; in his place and stead, and solely for the benefit of his estate. He has timely asserted all causes and commenced this action to recover a total sum of not less than $12,000,000.00 from the Defendants JACK LEFKOWITZ, BLUMA LEFKOWITZ, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, MEDSCAN MOBILE, and "JOHN DOES" 1 through 10, (all sometimes hereinafter jointly referred to as the "Defendants") based upon causes of action for fraud, aiding and abetting fraud, for the imposition of a constructive trust, for an accounting and return of stolen property, for conversion, for unjust enrichment, to pierce the corporate veil, for breach of fiduciary duty, for aiding and abetting breach of fiduciary duty, for civil RICO violations, for the imposition of punitive and treble damages, and for interest, costs and attorneys' fees.

5.     Other than acting as the Assignee for the benefit of the Decedent's estate, the Plaintiff has neither purchased nor acquired any personal interest in the claims asserted herein or in any of the proceeds that may ultimately be derived from this action.  All right, title and interest to STEINBERGER'S claim has since permanently vested in the Plaintiff by virtue of the Assignment; it is a *fait acompli that* is herein being pursued for nothing other than the sole benefit of the Decedent's heirs and estate.

**THE LEGAL STANDING OF THE PLAINTIFF
TO BRING AND MAINTAIN THIS ACTION
IN THE PLACE,  STEAD AND SHOES OF
THE DECEDENT**

**A.
The Underlying Power of Attorney**

6.     That Plaintiff DAVID KRETZMER'S authority is derived from a Power of Attorney originally made and given during the lifetime of TIBOR STEINBERGER, as Principal, to his designated Agents.

7.     On April 4, 2012, TIBOR STEINBERGER, a citizen of the United Kingdom and residing in the City of London, continually undergoing dialysis for renal failure, was extremely ill; he was too sick to travel, and he was unable to attend to personal his affairs. STEINBERGER, therefore, executed an Irrevocable Power of Attorney as Principal pursuant to Article 5, Title 15, of the New York General Obligations Law appointing three individuals, DAVID KRETZMER, CHAIM SAKS and BARRY KLEIN, to act as Agents on his behalf, each Agent also having the power and authority to act separately (see Exhibit "A" annexed hereto).

## B.
## The Subsequent Assignment

8.     Thereafter, on July 2, 2012, during STEINBERGER'S lifetime, his Agents, BARRY KLEIN and CHAIM SAKS, acting pursuant to the powers granted to them under STEINBERGER'S Power of Attorney, and as Assignors thereunder, assigned to DAVID KRETZMER, a citizen and permanent resident of the State of Israel, *"all claims, demands and cause or causes of action of whatever kind and nature that TIBOR STEINBERGER*

*has had, now has, or may have against JACK LEFKOWITZ, BLUMA*

*LEFKOWITZ, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT,*

*LLC, MAIMONIDES MEDICAL SERVICES, LLC, MEDSCAN MOBILE, or*

*any other person or persons, entity or entities, whether jointly or severally,*

*arising out of, or for, any loss, injury, or damage sustained by TIBOR*

*STEINBERGER in connection with a certain scheme to defraud him through*

*a sham investment scheme by which he was defrauded of the approximate*

*sum of $3,590,000 . . . ".*  (<u>Exhibit "B"</u>)

9.     That the Assignment had been executed after the fraud herein

complained of was discovered, and it was specifically made for no other

purpose but to secure any recovery for TIBOR STEINBERGER'S heirs and

estate, it being explicitly conditioned upon the fact that any monies

recovered were *"to be held in trust for the heirs of TIBOR STEINBERGER*

*in accordance with TIBOR STEINBERGER'S last will and testament."*  (Id)

10.     As Assignee hereunder, and in bringing this action, the Plaintiff

has legal title to the Decedent's claim and may properly enforce the same,

albeit for the ultimate benefit of the inured party's estate. Thus, the rights of the Assignee are no different than STEINBERGER would have had had he been alive at the time of the filing of this action, whereby all rights thereunder had permanently vested and accrued to the Assignee as of the date of the Assignment, July 2, 2012, prior to STEINBERGER'S demise, and are for the sole benefit of his heirs and estate.

11.    Other than having assigned the rights created under the Power of Attorney to DAVID KRETZMER, TIBOR STEINBERGER'S Agents took no further acts thereunder.

12.    Thereafter, and subsequent to the execution of the original Power of Attorney to his aforesaid Agents, and after his Agents granted Plaintiff the Assignment herein, all rights of recovery thereunder had vested permanently in the Plaintiff who then – by operation of law -- became the legal owner of all claims against the Defendants during TIBOR STEINBERGER'S lifetime. TIBOR STEINBERGER subsequently died in London, England, on October 3, 2012.  Notwithstanding, all rights to the

claims asserted herein had theretofore irretrievable vested in the Plaintiff.  A copy of his Death Certificate is annexed hereto and marked as Exhibit "C."

13.    Accordingly, the Plaintiff, DAVID KRETZMER (a citizen of Israel), as the Assignee of TIBOR STEINBERGER (a citizen of the United Kingdom), acting in his capacity as trustee for the heirs of the said Decedent in accordance with his last will and testament, and in the place and stead of the Decedent for the benefit of his estate, is the true, legal owner of all claims asserted against all Defendants and the proper Plaintiff in this action.

**B.**
**The Parties, Diversity of Citizenship,**
**And Jurisdictional Amount**
**(28 U.S.C. § 1332)**

14.    Plaintiff, DAVID KRETZMER, is a citizen and permanent resident of the State of Israel, residing at 15 Hahar Street, Kochav Yair, Israel.

15.    The authority of the Plaintiff, a citizen of the State of Israel, to prosecute this action is specifically derived through an Irrevocable Power of

Attorney and an Assignment subsequently made during the lifetime of TIBOR STEINBERGER by his Attorneys-in-Fact.  At the time of his death, STEINBERGER was a citizen and permanent resident of the United Kingdom and resided at 10 Portland Avenue, Stanford Hills, London, England.

16.    Upon information and belief, the individual Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ, are citizens of the State of New York, residing within the Eastern District of New York.

17.    Upon information and belief, the corporate Defendants, MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, maintain their principal place of business in the Eastern District of New York.

18.   This is an action between citizens of a State (*the Defendants*) and citizens or subjects of a foreign state (*the Plaintiff*) as defined by 28 U.S.C. § 1332(a)(2).

19.   The causes of action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000 exclusive of interest and costs, and that is between citizens of different states or of a foreign state, and pendent and/or ancillary state law claims arising out of a common nucleus of operative facts.

**C.**
**Jurisdiction.**

20.   Personal jurisdiction over the Defendants comport with the United States Constitution and is founded upon the Defendants' presence and doing business in the forum state in which this action is brought.

**D.**
**Venue.**

21.    Venue is laid in the Eastern District of New York, the judicial district in which the Defendants' acts or omissions have been committed, as well as it being the location of their residences, principal offices and places of business.

**E.**
**Allegations Common To**
**All Causes Of Action**

**Introduction**

22.    The Plaintiff, DAVID KRETZMER, as Assignee of TIBOR STEINBERGER, brings this action in such capacity in the shoes of the Decedent to recover damages, the proceeds of which are to be held by him in trust and distributed pursuant to the last will and testament of the said Decedent.


23.    This action stems from the violation and breach of trust by the Defendants; from their illegal, tortious and predatory acts in jointly conspiring with one another for the specific purpose of defrauding TIBOR

STEINBERGER and embezzling the said Decedent's property; and, by unlawfully depriving STEINBERGER of the same, to wit, the outright theft by Defendants of $3,590,000.00 that belonged to the said Decedent; by surreptitiously transferring and diverting the stolen funds out of the jurisdiction of this Court, and by concealing the proceeds of their theft in various offshore, numbered bank accounts, one of which being maintained in the name of the Defendant BLUMA LEFKOWITZ.

**The Object of This Action And The
Relief Sought By The Plaintiff**

24.    The Plaintiff herein seeks a judgment from this court against the Defendants, jointly and severally, in a sum of not less than $3,590,000.00; for an order imposing a constructive trust and for the return of the stolen property; for an accounting of all such funds that came into the hands of the Defendants; for an order compelling the Defendants to return the Decedent's monies transferred to their various entities and bank accounts and/or entities or accounts controlled by them; for an amount to be assessed by the trier of the facts as damages against the Defendants as based upon causes of action stemming in fraud, for breach of fiduciary duty, for aiding

and abetting fraud, for aiding and abetting the breach of fiduciary duty, for conversion, for unjust enrichment, to pierce the corporate veil, for civil RICO violations; and, for an additional sum for treble damages against the Defendants in an amount of not less than $9,000,000.00, plus interest, costs and attorneys' fees stemming from Defendants' civil RICO violations as hereinafter more fully described.

## The Parties

### *The Plaintiff*

25.    Plaintiff DAVID KRETZMER is a citizen of the State of Israel.

### *The Defendants*

26.    Upon information and belief, JACK LEFKOWITZ is a citizen of the United States and a resident of the Borough of Brooklyn, County of Kings, City and State of New York; he is also a shareholder and a principal of the codefendant MASKIL EL-DAL, INC.

27.    Upon information and belief, BLUMA LEFKOWITZ is a citizen of the United States and a resident of the Borough of Brooklyn, County of Kings, City and State of New York. She is the wife of the codefendant JACK LEFKOWITZ, and also a shareholder and a principal of the codefendant MASKIL EL-DAL, INC.

28.    Upon information and belief, MASKIL EL-DAL, INC., is a New York Religious Corporation formed by the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ for the specific purpose of committing various fraudulent acts; for hiding money from their creditors; and, in this case, it was used by the Defendants to defraud the Plaintiff and obtain his moneys through the scheme as is hereinafter described.

29.    As will hereafter be seen, MASKIL EL-DAL, INC., as well as the other entities owned or controlled by Defendant JACK LEFKOWITZ, has continually been used as vehicles to perpetrate numerous acts of fraud against various third parties, including, but not limited to,  the fraud committed against the Decedent herein. The Defendants have, thus,

exhibited this kind of ongoing threat of illegal activity to satisfy RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity" under 18 U.S.C.A. §§ 1341, 1343, 1962, that also forms a basis for Plaintiff's causes of action as brought under the Tenth Cause of Action herein.

30. Upon information and belief, CARE TO CARE MANAGEMENT, LLC, is a New York limited liability company also formed, owned and controlled by the Defendant, JACK LEFKOWITZ, as well the other codefendant, JOHN DOE 1, whose identity has not yet been ascertained, and that the aforesaid entity was used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his moneys through the scheme as is hereinafter described.

31. Upon information and belief, MAIMONIDES MEDICAL SERVICES, LLC, is a Delaware limited liability company also formed, owned and controlled by the Defendant, JACK LEFKOWITZ, as well the other codefendant, JOHN DOE 2, whose identity has not yet been

ascertained, and that this entity was also used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his moneys through the scheme as is hereinafter described.

32.   Upon information and belief, MEDSCAN MOBILE, is an unincorporated entity, operated and controlled by the Defendant, JACK LEFKOWITZ, as well the other codefendant, JOHN DOE 2, whose identity has not yet been ascertained, and that this unincorporated entity was also used for the specific purpose of deceiving and defrauding the Plaintiff in order to obtain his moneys through the scheme as is hereinafter described.

33.   That the aforesaid entities were utilized as vehicles through which the Defendants, by in engaging in a shell game, defrauded the Decedent through a sham investment scheme; and, whereby the stolen funds were surreptitiously transferred out the jurisdiction of this court and the United States; secretly deposited abroad in various numbered bank accounts under the control of various undisclosed beneficiaries (believed to include the Defendants) to conceal the beneficial account owners; all aimed at

hindering, impeding and obstructing the Decedent from obtaining the return of moneys rightfully belonging to him.

34.   "JOHN DOES" 3 through 10, are fictitious names and are intended to be the person, persons or entities serving as the nominees, transferees, enablers and/or alter egos of the Defendants in possession of the Decedent's property that is the subject of this action.  And, if and when their identities are ascertained, Plaintiff intends to substitute them in this action after discovery thereof.

## THE UNDERLYING FACTS AND BACKGROUND
## OF THIS ACTION

### (i)

### The Underlying Scheme And Means Used To Steal
### And Purloin The Decedent's Monies

35.   The Defendants, acting together and in concert, utilized three separate entities, MASKIL EL DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE in order to perpetrate the fraud complained of herein.

36.    The object of the fraud was to gain access to monies that that amounted to the sum of $3,590,000.00 received by the Decedent from the proceeds of a real estate transaction and sale, and to steal the same from him through a bogus investment in these entities.

37.    In or about November 2007, the Plaintiff, TIBOR STEINBERGER, as sole principal of 178 FRANKLIN HOLDING CORP., concluded a real estate transaction and sale property in New York State whereby the proceeds thereof were deposited and retained for his use and benefit in the IOLA escrow account of BERNARD SCHFRAN, ESQ., the attorney for the purchaser and a member of the New York bar.  The moneys in the attorney's escrow account amounted to $3,590,000.00.

**(ii)**

**The Scheme**

38.     That sometime after the aforesaid real estate closing, the Decedent had thereafter been advised by the Defendant JACK LEFKOWITZ to make an investment with the proceeds of the sale in:

  i. CARE TO CARE MANAGEMENT, LLC, a New York limited liability company that was to be formed as a Radiology Benefits Management Service company allegedly providing medical and/or clinical services to its subscribers;

  ii. MAIMONIDES MEDICAL SERVICES, LLC, a Delaware limited liability company that was to be formed as a medical service provider to its subscribers; and

  iii. MEDSCAN MOBILE, an unincorporated entity, formed to create medical mobile scanning devices/equipment.

39.     However, pending discussions between the parties, and in reliance upon Defendants' fraudulent misrepresentations, TIBOR STEINBERGER, consented to the transfer of the funds out of the attorney's

escrow account, but specifically to be held "*in trust*" by Defendant JACK LEFKOWITZ, as trustee, with the Defendant corporation, MASKIL EL-DAL, INC.

40. Upon information and belief, MASKIL EL DAL, INC., is solely owned and wholly controlled by Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ.

41. In convincing the Decedent to invest in what has ultimately been determined to be a fraudulent scheme solely aimed at obtaining the Decedent's monies -- but before any formal documents or agreements could be executed in the contemplated investments -- the Defendant made various oral and written misrepresentations, more specifically, those contained in a letter dated November 11, 2007, whereby JACK LEFKOWITZ represented and acknowledged to the Decedent that "*[u]pon written request from yourself moneys will be released to you promptly as per your instructions and directions.*" The letter was signed "JACK LEFKOWITZ Trustee." (Exhibit "D")

42.     That CARE TO CARE MANAGEMENT, LLC was allegedly formed by the Defendants for the purpose of providing radiology benefits services and/ or medical or clinical services to its subscribers. However, this entity was used by the Defendants as a vehicle to defraud the Decedent by which they falsely represented to him that the Defendants had transferred his moneys into that entity as his capital contribution.

43.     Indeed, the aforesaid representations (that Decedent's money was transferred into CARE TO CARE MANAGEMENT, LLC) were false, in that the Defendants, in fact, never transferred Decedent's money into this entity as an investment or as a capital contribution; but the Defendants diverted and transferred Decedent's monies out of this Court's jurisdiction to foreign, offshore, numbered bank accounts held and controlled by the Defendants despite the fact that Decedent neither consented to investing nor becoming a member of CARE TO CARE MANAGEMENT, LLC, nor to the said transfer of his money by the Defendants.

44.    That MAIMONIDES MEDICAL SERVICES, LLC was allegedly formed by the Defendants as a medical service provider. However, this entity was used by the Defendants as a vehicle to defraud the Decedent by falsely representing to him that the Defendants had transferred his moneys into that entity as his capital contribution.

45.    Indeed, the aforesaid representations (that Decedent's money was transferred into MAIMONIDES MEDICAL SERVICES, LLC) were false, in that the Defendants, in fact, never transferred Decedent's money into this entity as an investment or as a capital contribution; but the Defendants transferred Decedent's monies out of this court's jurisdiction to foreign, offshore bank accounts held and controlled by the Defendants.

46.    That MEDSCAN MOBILE is allegedly an unincorporated entity, designed to create mobile medical scanning devices and equipment. However, this entity was also used by the Defendants as a vehicle to defraud the Decedent by falsely representing to him that the Defendants had transferred his moneys into that entity as his capital contribution.

47.     Indeed, the aforesaid representations (that Decedent's money was transferred into MEDSCAN MOBILE) were false, in that the Defendants, in fact, never transferred Decedent's money into this entity as an investment or as a capital contribution; instead, the Defendants surreptitiously transferred Decedent's money out of this Court's jurisdiction to foreign, offshore bank accounts held and controlled by the Defendants.

**(iii)**
**Albeit by Fraud, The Defendants Successfully**
**Obtain The Decedent's Money**

48.     Despite the fact that the Decedent's funds had been placed in trust with JACK LEFKOWITZ, the alleged "Trustee," pending any further, prospective investments, the Defendants had advised him that the investments had already been made for his benefit in CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, through Defendant, JACK LEFKOWITZ and BLUMA LEFKOWITZ's religious corporation, MASKIL EL-DAL, INC. Having, thus, placed his trust and confidence in the Defendant JACK

LEFKOWITZ to guide and advise him in making various investments, the Decedent had no reason to question his bona fides and relied upon his representations, albeit false, to that effect.

**(iv)**
**The Defendants Fraudulently Conceal Their Actions**
**And Transfer The Stolen Funds Into Their Four Separate**
**Offshore, Numbered Bank Accounts**

49.    Despite the pretense and the false and fraudulent representations of the Defendants, the fact is that they never transferred any of Decedent's moneys into CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE al all, but, instead, exploiting the consent fraudulently obtained from the Decedent, presented it to BERNARD SCHFRAN, ESQ., and had him transfer out the Decedent's funds out from his IOLA escrow account.  And, surreptitiously, without Decedent's knowledge or consent, caused the funds to be transferred abroad and stowed in their own secret offshore numbered bank accounts as follows:

**Bank Wire Transfer #1 –**

Bank Jacob Safra (Schweiz AQ)
Blecherweg 1/ Paradeplatz-Postfach 2123
CH-8022 Zurich, Switzerland
Ref 506071
IBAN CH35085470506071   00010
For Beneficiary: **RORICI (CUSTOMER)**
Attn:  Mr. Marcus Leuzinger
Amount: $820,000.00

**Bank Wire Transfer #2 –**

Credit Suisse, Zurich, Switzerland
IBAN CH 88 0483 5090 9410 4400 0
Swiss Code Creschzz/80A
For Account: Arzi Bank da Zurich
Account No. 909410-44
Attn: Motti Zoladz
For Beneficiary:  **MONTICOLA (CUSTOMER)**
Amount: $700,000.00

**Bank Wire Transfer #3 –**

UBS AG
Paradeplatz 6 PO Box CH 8098
Zurich, Switzerland
Att'n: Stephan Suess
Beneficiary: **230-772684 (CUSTOMER)**
Amount: $750,000.00

**Bank Wire Transfer #4 –**

Mizrahi Tefahot Bank Ltd.
12 Lincoln Street
Tel Aviv, 67134 Israel
(SWIFT ID)  MIZBLIT
Beneficiary:  **Bluma Lefkowitz**
Account No. 135949
Amount $795,000.00

50.     That, upon information and belief, the Defendants, and each of them, maintain and control the above offshore numbered bank accounts specifically formed to disguise their ownership as the beneficiaries thereof, all in order to avoid the payment of federal and state income taxes and to defraud both the civil and criminal the laws of the United States of America.

51.     That, in so defrauding the Decedent and in committing an outright theft of his money, the Defendants were able to utilize bank accounts previously maintained and/or owned by them into which those funds were transferred and deposited, not only to defraud the Decedent, but also to evade the income tax laws and defraud the government of the United States of America in violation of the civil and criminal laws thereof; and, as

shall hereafter be seen, all of which are indictable and predicate offenses offenses under federal and state laws.

### (v)
**The Initial Discovery of The Theft And
Attempt To Avoid Litigation Between The Parties**

52.    Being in seriously declining and rapidly failing health that was advancing at a most precipitous pace, and mindful of his infirmities and the mortality of human life, in  2011 STEINBERGER started taking steps to gather his assets and take inventory of his investments.

53.    That, sometime in or about early 2011, while in the United States, and making inquiry into the status of the Decedent's alleged investments that were entrusted to JACK LEFKOWITZ from the proceeds of the sale of his real estate, the Plaintiff fortuitously discovered that the funds were neither held in trust nor reinvested as had been represented, but, instead, transferred by BERNARD SCHFRAN, ESQ., at the request of Defendant JACK LEFKOWITZ to the personal accounts of the Defendants instead as alleged in paragraph "49" herein.

54.     Thereafter, and the Decedent having been apprised of the Plaintiff's findings, steps were taken to have the monies returned to their rightful owner. And, specifically in order to avoid any litigation between the parties -- something that is expressly frowned upon as being against the Decedent's  religious beliefs and the beliefs of the community of which parties belong to  -- the Decedent enlisted the aid of his son-in-law, CHAIM SAKS, to render assistance.  It should be noted that at that time, the Decedent was seriously ill; he was on a strict regimen of dialysis treatments for renal failure (which he ultimately died from) and -- living in London, England – he was unable to travel or handle his own affairs. Thus, the Decedent requested that his son-in-law take steps to amicably settle the matter with JACK LEFKOWITZ. And, insofar as Rabbi BENYUMIN EISENBERGER was the rabbi of  JACK LEFKOWITZ, his aid was also enlisted by CHAIM SAKS to settle any  differences between the parties.

55.     What then followed were extended efforts by CHAIM SAKS, including numerous telephone conversations with JACK LEFKOWITZ; and, also, numerous telephone calls and meetings with the intermediary, rabbi

BENYUMIN EISENBERGER, as well as with other community members, all in an attempt to avoid any litigation in accordance with the parties' religious beliefs, and to amicably settle the differences between them.

56.    That, despite the continuing efforts of the parties to settle the matter, JACK LEFKOWITZ --  who owns a residence and spends most of his time abroad in Israel -- continually procrastinated and delayed any meetings with CHAIM SACKS and his rabbi with proffered excuses attributed to his inability to attend due to scheduling differences and the travel difficulties of residing abroad.   Thus, any efforts at settlement were incessantly postponed as it subsequently appeared that JACK LEFKOWITZ had been engaging in dilatory tactics by delaying all proceedings between himself, CHAIM SAKS, and rabbi EISENBERGER.

57.    Thereafter, and when it was ultimately realized that any negotiations were futile, and being extremely ill, the Decedent appointed his attorneys-in-fact as his Agents to formally handle his affairs (Exhibit "A"); and, subsequently thereafter, his Agents assigned all claims against the

Defendants to the Plaintiff (<u>Exhibit "B"</u>) who has brought the causes of action as are  hereinafter set forth.

## FIRST:

### PLAINTIFF'S FIRST CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Common Law Fraud*)

58.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.


59.  That this claim is timely, having been brought by Plaintiff within six years after the date of accrual of the cause of action as stated herein.


60.    That, upon information and belief, the Defendant JACK LEFKOWITZ and his wife, the codefendant BLUMA LEFKOWITZ, are the sole principals of Defendant MASKIL EL-DAL, INC.

61.   That Defendant JACK LEFKOWITZ fraudulently induced TIBOR STEINBERGER to give him access to his monies by making representations, both orally and in writing, to the Decedent that the subject funds, the amount of $3,590,000.00 as described herein, would be held "in trust" with MASKIL EL-DAL, INC., and that Defendant JACK LEFKOWITZ would hold those moneys as "Trustee" and would return the same on demand.

62.   More specifically, on November 11, 2007, JACK LEFKOWITZ made oral and written representations and statements to the Decedent to the following effect:

> "[A]ll monies transferred into our account as per instruction of
> Mr. Tibor Steinberger shall be held in trust for your benefit.
> "Upon written request from yourself all monies will be returned
> to you promptly as per your instruction and direction."
>
> (Exhibit "D")

63.   That the aforesaid statements were made in writing and signed by JACK LEFKOWITZ in order to induce the Decedent to part with, and

give his consent to the transfer his monies to the defendant MASKIL EL DAL, INC.,  and to assuage any of his concerns regarding the return thereof.

64.   That the aforesaid statements and representations made by JACK LEFKOWITZ were false when made, were known by him to be false, and were intended to secure the reliance and consent of the Decedent to the transfer of his money and to induce him to gave his consent thereto.

65.   That, in reliance upon the false and fraudulent misrepresentations of the Defendants, the Decedent was duped into consenting to the transfer of his monies out from the IOLA escrow of BERNARD SCHFRAN, ESQ., to wit, the sum of $3,590,000, account of into MASKIL EL-DAL, INC., the entity wholly owned and controlled by the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ. However, those funds were deliberately diverted by the said Defendants, finding their way into the offshore accounts of JACK LEFKOWITZ and BLUMA LEFKOWITZ instead.

66.    To the extent referred to herein whereby the said Defendants represented to the Decedent, specifically stating to him on November 11, 2007 that: *"[A]ll monies transferred into our account as per* [your] *instruction . . . shall be held in trust for your benefit.* [And, that] "[u]*pon written request from yourself all monies will be returned to you promptly as per your instruction and direction."* (Id)

67.    That the aforesaid statements, made both orally and in writing on November 11, 2007, were false when made; they were known by the Defendant to be false, and were made for the specific purpose of misleading and deceiving the Decedent; to induce him to act and rely thereon, and aimed at getting him to part with his money.

68.    That, in fact, the Decedent's monies were never held in trust or reinvested in any of the aforesaid entities as represented; but, instead, transferred by the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ, to their concealed, offshore and secretly numbered bank

accounts in Switzerland and in Israel as indicated under paragraph number "24" above.

69.   That the Plaintiff's Decedent, in so acting, reasonably relied upon the statements and representations of the Defendant JACK LEFKOWITZ, albeit intentionally false and known to the said Defendant to be false.

70.   As result of the foregoing, the Plaintiff's Decedent sustained the damages as are herein complained of; and, that Plaintiff is accordingly entitled to judgment against Defendants, the amount to be determined by the trier of facts hereof, but not less than $3,590,000.00.

71.   An inference may be properly drawn against the Defendant BLUMA LEFKOWITZ, and the fraudulent acts of her husband, JACK LEFKOWITZ, may be imputed to her as a co-conspirator. BLUMA LEFKOWITZ was a direct beneficiary of the proceeds of the fraud; she had actual knowledge thereof and knew of the false and fraudulent

misrepresentations of her husband, JACK LEFKOWITZ that were made for, amongst other things, her benefit;  and, she accordingly participated in the fraud and enabled its commission as a recipient of the illegal gains that were subsequently transferred to her and secreted in her personal bank account in Israel as referred to in paragraph "49" herein.

## SECOND:

## PLAINTIFF'S SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (*Fraud In The Inducement*)

72.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them in the following cause of action herein with the same force and effect as through set out at length.

72.    The Defendants, acting jointly and in concert, accomplished their scheme through false pretenses and through fraudulent trick, scheme and device, as well as by false representations and fraudulent concealments.

73.   Had the Decedent known the truth as actually existed, he would have never agreed to turn his property over to be held <u>"in trust"</u> or reinvested as was falsely misrepresented to him and deceptively stated that the monies are *"to be held in trust for your benefit."*

74.   Under the circumstances complained of herein, Defendants' statements were knowingly reckless and made with the intent to deceive and for the purpose of intentionally inducing the Decedent to act thereon.

75.   That the Decedent did, in fact, justifiably rely upon Defendants' misrepresentations and was thereby induced to act upon their false and fraudulent statements and deliberate misrepresentations to his injury and damage, as described herein.

76.   The actions of the Defendants were intentional and aimed at deceiving the Decedent, and based upon their avarice and greed, and in coveting the property of another that did not belong to them.

77.    As result of the foregoing, the Decedent sustained financial damages stemming from the illegal acts of the Defendants.

78.    Under the circumstances herein prevailing, the Plaintiff is entitled to pursue this cause of action against the Defendants in damages for fraud in the inducement, including, but not limited to, an award of punitive or exemplary damages as may so be determined by the trier of the facts hereof, but not less than $3,590,000.00.

## THIRD:

### PLAINTIFF'S THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Aiding And Abetting Fraud*)

79.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

80.    That Defendant JACK LEFKOWITZ induced Plaintiff's Decedent to deposit with him, and then to hold Plaintiff's $3,590,000.00 in trust and then allegedly reinvested through a deliberately contrived and sham investment scheme utilizing his entities, the Defendants, MASKIL EL-DAL, INC. and CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE. And, as a result of such actions, the Defendants, and each of them, affirmatively assisted, help conceal, and enabled the fraud to be successfully carried out as complained of herein.

81.    That as a result of the acts and omissions complained of herein, including, but not limited to, Defendants misappropriation and conversion of Plaintiff Decedent's $3,590,000.00, Defendants breached their fiduciary duties owed to Plaintiff's Decedent.

82.    That all Defendants knowingly participated, acted in concert by rendering substantial assistance and inducing Plaintiff's Decedent to furnish

them $3,590,000.00, and thereafter fraudulently retaining, concealing, and failing to return the same upon the Decedent's demand for same.

83.     More specifically, the Defendant JACK LEFKOWITZ, with intent to deceive, instructed the attorney holding the Decedent's funds in escrow to transfer the funds to various offshore bank accounts under his dominion and control, including to an offshore account held and controlled by Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ while, at the same time, misrepresenting to the Decedent that the funds would be held by him in trust as a trustee and later reinvested for his benefit in the entities described herein.

84.     Subsequently thereafter, and before any agreements could be entered into between the parties with Plaintiff's Decedent, the Defendant, JACK LEFKOWITZ, the alleged trustee, made various fraudulent misrepresentations to the effect that his entity, MASKIL EL-DAL, INC., a religious corporation (that Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ being principals thereof) would hold the funds and serve as

investor to yet his other entities for the benefit of the Decedent, CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE; and, that, upon information and belief, Defendants JACK LEFKOWITZ and Defendants "JOHN DOES" 1 through 10 are the principals thereof.

85.   That throughout the course of dealings, the Defendants made untruthful representations to Plaintiff's Decedent that were knowingly false, and by which, after obtaining access to the Decedent's funds, the Defendants transferred those funds to their offshore, secreted numbered bank accounts solely to deceive Plaintiff's Decedent, rather than holding the same in trust or reinvesting them as alleged; and, thus,  permanently depriving him of his property.

86.   That the acts and omissions of the Defendants as complained of herein, in acting as aiders and abettors, facilitated the fraud complained of; and, that under the structured scheme herein, all Defendants jointly participated in their self-dealings, failed to use reasonable care in handling

the funds of Plaintiff's Decedent, failed to disclose and withheld material facts, made false and factual misrepresentations as are specifically described in Exhibit "C" annexed hereto, and additionally failed to return the funds upon demand.

87.    In light of the foregoing, all of the Defendants proximately caused the harm on which the primary liability is predicated, and, accordingly, are jointly and severally liable for the damages sustained by the Plaintiff's Decedent and for any judgment entered, to be determined by the trier of facts hereof.

88.    As a result of the foregoing, Defendants, and each of them, are liable in damages for their said actions in aiding and abetting the fraud complained of herein.

## **FOURTH:**

### **PLAINTIFF'S FOURTH CAUSE OF ACTION**
### **AGAINST ALL DEFENDANTS**
### (*Breach Of Fiduciary Duty*)

89.     Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

90.     That an ongoing and continuing confidential relationship and trust was created between the Decedent and Defendant JACK LEFKOWITZ as a result of the latter assuming the role as trustee of the Decedent's monies. That relationship also arose out of the principal agency relationship that had also been established by and between Plaintiff's Decedent and Defendants, JACK LEFKOWITZ, BLUMA LEFKOWITZ and "JOHN DOES" 1 through 10, the principals of MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE.

91.   That JACK LEFKOWITZ, through his entities MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, and through the principals thereof, Defendant BLUMA LEFKOWITZ and "JOHN DOES" 1 through 10, represented and agreed to continually hold the Decedent's funds in trust and for his benefit.

92.   However, by the Defendants' acts and omissions complained of herein, including, but not limited to, the Defendants' clandestine and hither to undisclosed misappropriation and conversion of Plaintiff's $3,590,000.00, the Defendants' failure to act honestly, to exercise reasonable care in handling Plaintiff Decedent's funds, by engaging in self-dealings, in failing to disclose and deliberately withholding material facts to Plaintiff's Decedent, all constitutes an egregious breach of the fiduciary duties owed to the Decedent.

93.   In light of the foregoing, the Plaintiff is entitled to an award of actual damages stemming from Defendants' breach of their fiduciary duties,

for disgorgement of any profits that the Defendants have earned as a result of the acts or omissions complained of herein; and, additionally, for punitive or exemplary damages, and to be determined by the trier of the facts hereof, but not less than $3,590,000.00.

## FIFTH:

**PLAINTIFF'S FIFTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(*Aiding And Abetting Breach of Fiduciary Duty*)**

94.    Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

95.    That, by having agreed to safeguard and hold his money in trust and to return it on demand, the defendant JACK LEFKOWITZ owed a fiduciary duty and obligation to the plaintiff's Decedent.

96.     In procuring the Decedent's monies by fraudulent means, and by subsequently refusing to return the funds to the Decedent, the defendant, JACK LEFKOWITZ breached his fiduciary duties as were owed to the Decedent.

97.     That all Defendants, and each of them individually, as aiders and abettors, had actual knowledge of Defendant LEFKOWITZES' breach of his fiduciary duties.

98.     That all Defendants, acting jointly, severally and together in concert, participated, assisted, aided and abetted in the breach of Defendant JACK LEFKOWITZES' breach of his fiduciary duties, the commission of the fraudulent acts or omissions complained of herein, including, but not limited to, procuring the Decedent's funds through false pretenses; funneling Plaintiff Decedent's funds through offshore foreign bank accounts held in the names of the Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ to disguise the true owners thereof; and in also utilizing the Defendants MASKIL EL-DAL, INC. in a sham investment scheme with

CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE as invented by the Defendants.

99.    That all Defendants, and each of them, knowingly induced and/or participated in the breach and had knowledge that the acts or omissions complained of herein are wrongful, illegal and tortious.

100.   As a result of the foregoing, Plaintiff's Decedent sustained the damages and injuries as are complained of herein.

101.  In light of the foregoing, all the Defendants are to be held jointly and severally liable for the damages for aiding, abetting and assisting in the breach of fiduciary duty owed to the Decedent and for any judgment as may be determined by the trier of facts hereof.

**SIXTH:**

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(*Imposition Of Equitable Lien*
*And A Constructive Trust*)**

102.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.


103.   The fiduciary relationship that had been created and established between the Decedent and the Defendants, as evidenced by the transactions between them whereby the Defendant JACK LEFKOWITZ acknowledgement that the Decedent's moneys would be held by him as trustee, *"in trust for [his] benefit,"* and that *"[u]pon written request from yourself moneys will be released to you promptly as per your instructions and directions,"* forms the basis for this cause of action.

104.   That there was an express promise by Defendants that Decedent's moneys would be returned to him *"promptly as per* [his] *instructions and directions."*

105.   In reliance upon the promise of the Defendant, and believing in the  honorable intentions of JACK LEFKOWITZ, the Decedent consented to the transfer of $3,115,000.00 to, MASKIL EL-DAL, INC., the entity owned and controlled by JACK LEFKOWITZ and BLUMA LEFKOWITZ.

106.   That, despite Decedent's demands for the return of his money, the Defendants wrongfully refused to return any sums whatsoever to him.

107.   As result of the foregoing, the Defendants have been unjustly enriched at the expense of the Decedent, and all to the latter's damage as complained of herein.

108. Thus, by and through the foregoing, the Plaintiff has demonstrated the existence of (1) a confidential or fiduciary relation, (2) a

promise, (3) a transfer in reliance thereon and (4) unjust enrichment, all constituting the basis for a cause of action against the Defendants for the imposition of a constructive and equitable lien.

109.   The Plaintiff is therefore entitled to trace the Decedent's funds and to have a constructive trust and equitable lien imposed against the resulting assets of the Defendants in order to repatriate the property of the Decedent from Defendants' offshore bank accounts.

110.   In the event the Plaintiff is unable to locate any of his property transferred and secreted by the Defendants, then the Plaintiff seeks to impose a constructive trust and equitable lien against any other of Defendants' properties that may be found in this or in any other jurisdiction.

## SEVENTH:

### PLAINTIFF'S SEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Conversion*)

111.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

112.   That the Defendants have  intentionally and without authority, through trick, scheme and device, assumed and retained control and illegally exercised dominion over the Decedent's property, to wit, the moneys allegedly held in trust by Defendant JACK LEFKOWITZ; and, that, by refusing to return the same after due demand having been made therefor, have interfered with Decedent's right of possession thereto.

113.   That Plaintiff, as Assignee, has a possessory and vested right and interest in the property sought to be returned herein.

114.   That the Defendants, without the Decedent's permission, or consent, and disregarding a demand for the return of his funds, continue to interfere with Plaintiff's property rights, all to his damages as are claimed of herein.

115.   Plaintiff is entitled to judgment against the Defendants for the damages in conversion and civil theft as claimed in this action as result of having intentionally converted his property and refusing to return same.

### EIGHTH:

**PLAINTIFF'S EIGHTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(*Unjust Enrichment*)**

116.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

117.  In light hereof, the Defendants were enriched; the enrichment was at the Decedent's expense; and the Defendants' retention of the benefit would be unjust. And, in such circumstances equity and good conscience require the Defendants to make restitution.

118.  That, as a result of the foregoing, the Defendants were unjustly enriched through their acts of fraud, misrepresentation and deceit, all at the Decedent's expense; and, that it is against equity and good conscience to permit them to retain what is sought to be recovered herein.

## NINETH:

### PLAINTIFF'S NINETH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Accounting -- Disclosure And Return*
### *of Plaintiff's Property*)

119.  Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

120.   That, in light of the existence of the aforesaid financial relationship of a mutual and confidential nature between the parties whereby money or property was entrusted to the Defendants, the Plaintiff has the right of imposing an obligation upon the Defendants, and each of them, including JACK LEFKOWITZ, the alleged <u>trustee</u>, to account for all of the Decedent's monies.

121.   That, under the circumstances hereof, the court should order the Defendants, and each of them, to fully account for the Decedent's money that was allegedly *"held in trust for [his] benefit,"* to disclose the present location of those assets, and to identify the individual or entity presently in possession or control thereof.

122.   That, in furtherance of any accounting, the issuance of Letters Rogatory to the courts of Switzerland and Israel for extra-judicial assistance is proper so that the testimony can be taken of the depository banks in the foreign jurisdictions where the Defendants had transferred and deposited the

Decedent's moneys into their various offshore banks; and, so that the funds may be, traced, identified, preserved and/ or repatriated pending the outcome of this action.

## TENTH:

**PLAINTIFF'S TENTH CAUSE OF ACTION
AGAINST ALL DEFENDANTS
(*Civil RICO Violations*)**

123.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

124.   Plaintiffs assert this cause of action against the Defendants under 18 U.S.C. §§ 1961 - 1968, the federal Racketeer Influenced Corrupt Organizations Act ("RICO") whereby it is unlawful for any person employed by or associated with any enterprise engaged in or the activities which affect, interstate or foreign commerce to conduct or participate

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

125.   Plaintiff has been afforded a private right of action under the statute for treble damages, costs and attorney fees under the RICO statute (18 U.S.C. § 1962), and state courts have concurrent jurisdiction over civil RICO claims (*Tafflin v. Levitt*, U.S. Supreme Court, 493 U.S. 455 (1990)).

126.   The actions of the Defendants' as herein complained of are based in a scheme, the object thereof being to procure the Decedent's monies through fraud, trick and device.  And, in implementing their scheme, the Defendants have run afoul of the RICO statutes for which they are answerable in the damages that Plaintiff seeks to recover herein.

## Background

127. The Defendants, JACK LEFKOWITZ and BLUMA LEFKOWITZ, have utilized various entities in an ongoing commission of various fraudulent activities, the instant fraud having been perpetrated

against the Plaintiff's Decedent, TIBOR STEINBERGER, and appearing to be just one of Defendants' latest ventures in the civil theft of the property of others.

128.   JACK and BLUMA LEFKOWITZ are no strangers to engaging in various fraudulent activities and in secreting their assets and ill-gotten gains in the many entities they control, including, but not limited to, MASKIL-EL-DAL, INC. and MEDSCAN with which they maintain a most incestuous relationship that is aimed at defrauding their creditors. (See Exhibit "E" and Exhibit "F")   The Defendants have, thus, exhibited an ongoing threat of illegal activity to satisfy RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity" under 18 U.S.C.A. §§ 1341, 1343, 1962.

129.   Once more, in the commission of a fraud against the Decedent herein, JACK and BLUMA LEFKOWITZ have again used their Defendant entities, including MASKIL EL-DAL, INC., as vehicles to steal the Decedent's monies.

**Racketeering Violations**

130.   Upon information and belief, and in or about November - December, 2007, within the Eastern District of New York and elsewhere, the defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ, being persons employed by and associated with enterprise, as more fully described below, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as set forth herein.

**The Enterprise**

131.   The enterprise consists of JACK LEFKOWITZ, acting in concert and together with BLUMA LEFKOWITZ, that  utilizes MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, and others presently unknown (whose identities Plaintiff intends to allege when

discovered) as vehicles to fraudulently obtain the property of the Decedent.

132.  The shared purposes or objective of the enterprise has always been, and was, as in the present instance, to obtain the property of others, i.e., the Decedent's money, through fraud trick, scheme and device.

133.  The principal means and the method used by the Defendants in furthering their scheme was, as herein complained of, to first convince the Decedent that MASKIL EL-DAL, INC., would receive his monies to be held in trust; and, having thereafter gained his trust and confidence in consenting to the transfer of his assets to that entity, the Defendants fraudulently used MASKIL EL-DAL, INC., CARE TO CARE MANAGEMENT, LLC, MAIMONIDES MEDICAL SERVICES, LLC, and MEDSCAN MOBILE, only as mere façades by which to facilitate their theft, and claiming that the Decedent's monies had been invested therein as capital investments. However, all the while, the Defendants had illegally diverted the Decedent's monies from the escrow account of an attorney, not into MASKIL EL-DAL, INC., but to their offshore, numbered accounts in Switzerland and Israel as

indicated herein.

134.   That, together with and utilizing the above entities, each of the Defendants herein were members of an illegal "enterprise" specifically formed for the purpose of committing a theft of the subject moneys from the Plaintiff's Decedent (18 U.S.C. § 1961 (4)); and, each of the individual Defendants are "Persons" as defined in (18 U.S.C. § 1961 (3)) subject to liability hereunder.

**The Pattern of Racketeering Activity**
**And Predicate Acts**

135.   That the pattern of racketeering activity engaged in by Defendants (18 U.S.C. § 1961 (5)) consisted of at least two acts committed within ten years of each other, to wit, (a) transferring and/or causing the transfers of the moneys herein referred to in paragraph "31" of this complaint on at least four separate occasions, by wiring same to various banks in Switzerland and in Israel; and (b) in further use of the mails and

telephone on various dates in contacting the Decedent as well as the various banks as hereinabove stated.

136. On or about November 11, 2007, the Defendants JACK LEFKOWITZ and BLUMA LEFKOWITZ, in furtherance and the commission of the fraud complained of herein, used, and/or caused to be used the United States mails  (18 U.S.C.A. § 1341 ["Frauds and swindles"]) and/or wires (18 U.S.C.A. § 1343 ["Fraud by wire, radio, or television"] on at least four occasions to transfer and secrete the funds stolen from the Decedent, including, but not limited, to violations of the money laundering statutes of the United States (18. U.S.C.A § 1957 ["Engaging in monetary transactions in property derived from specified unlawful activity"]), during the past ten years by which, through fraud and deceit, and contrary to the trust reposed in them by the Decedent, by having wired or caused to be wired the various sums of Defendant's monies as herein described from the IOLA Escrow Account of BERNARD SHAFRAN, ESQ., to the following recipients:

**Bank Wire Transfer #1 –**

Bank Jacob Safra (Schweiz AQ)
Blecherweg 1/ Paradeplatz-Postfach 2123
CH-8022 Zurich, Switzerland
Ref 506071
IBAN CH35085470506071   00010
For Beneficiary: **RORICI (CUSTOMER)**
Attn:  Mr. Marcus Leuzinger
Amount: $820,000.00

**Bank Wire Transfer #2 –**

Credit Suisse, Zurich, Switzerland
IBAN CH 88 0483 5090 9410 4400 0
Swiss Code Creschzz/80A
For Account: Arzi Bank da Zurich
Account No. 909410-44
Attn: Motti Zoladz
For Beneficiary:  **MONTICOLA (CUSTOMER)**
Amount: $700,000.00

**Bank Wire Transfer #3 –**

UBS AG
Paradeplatz 6 PO Box CH 8098
Zurich, Switzerland
Att'n: Stephan Suess
Beneficiary: **230-772684 (CUSTOMER)**
Amount: $750,000.00

**Bank Wire Transfer #4 –**

Mizrahi Tefahot Bank Ltd.
12 Lincoln Street
Tel Aviv, 67134 Israel
(SWIFT ID)  MIZBILIT
Beneficiary:  **Bluma Lefkowitz**
Account No. 135949
Amount $795,000.00

137.   That, the wires and/or mails were utilized by the Defendants to secrete the funds fraudulently obtained by the Defendants and stolen from the Decedent in their said offshore, numbered and unreported bank accounts, and to also defraud the taxing authorities of the United States of America.

138.   That the hereinabove mentioned acts are indictable under both federal and state law.

139. That, as a result of the foregoing, Defendants engaged in "Racketeering Activity" as defined in 18 U.S.C. § 1961(1) involving mail fraud (18 U.S.C.A. § 1341), wire fraud (18 U.S.C.A. § 1343), money laundering (18. U.S.C.A § 1957), and obstruction of justice.

### The Continuing And Ongoing Nature
### of The Enterprise

140. Since 2006, continuing in 2009, and continuing up to the date hereof, JACK and BLUMA LEFKOWITZ have utilized and controlled MASKIL EL-DAL, INC., and the various other Defendant entities to continually hide assets and defraud their creditors and others.

141. That civil judgments were heretofore entered against Defendant JACK LEFKOWITZ individually, including but not limited to a judgment in favor of Lee Ordell Real Estate, Inc. in the sum of $670,966.00, docketed in the Supreme Court, New York County, and filed on September 5, 2002; a judgment in favor of Fischbein Badillo Wagner Harding, in the sum of $212,097.00, docketed in the Supreme Court, New York County, and filed on October 2, 2001.

142.   That Defendants utilized MASKIL EL-DAL, INC. to hide their assets and to defraud various creditors including the judgment-creditors as alleged herein.

143.   Their continued use of MASKIL EL-DAL, INC. to hide assets and defraud their creditors has been noted and judicially established in two opinions arising out of the Supreme Court of the State of New York, County of New York. (*See* *Lee Odel Real Estate Inc. v Jack Lefkowitz, Bluma Lefkowitz and Maskil El-Dal, Inc.,* NYS Supreme Court, Ind. No. 108939/07 [Exhibit "E"]**;** and *Core Marketing Group, LLC v. Jack Lefkowitz, Maskil El Dal, Inc., et ano.*, NYS Supreme Court, Ind. No. 114604/06 [Exhibit "F"]). The Defendants have continually engaged in and exhibited an ongoing threat of illegal activity in satisfaction of RICO's close-ended continuity requirement for establishing a "pattern of racketeering activity."

## The Nexus to Interstate Commerce

144.   That the foregoing enterprise was engaged in, or its activities affected, interstate and/or foreign commerce, and Defendants were part of such "enterprise" that was engaged in and which affected interstate commerce.

145.   Furthermore, the aforesaid enterprise was actually affected by and actually conducted via the racketeering activity as aforesaid, in that, there was a nexus between the component predicate acts as referred to above and the said enterprise by which the theft of Decedent's property had been committed.

146.   That, as a result of the foregoing, the Defendants did conspire amongst themselves to violate the provisions of the RICO Act as hereinabove described (18 U.S.C. § 1962(d)).

147.   That the foregoing actions of the Defendants did violate the provisions of 18 U.S.C. 1962(c).

148.   That, as a result of the foregoing, Plaintiff's Decedent has been injured by reason of the aforesaid violations (18 U.S.C. §§ 1962(c) and 1964 (c)), his said injuries being wholly compensable under the statute as is therein provided for.

**ELEVENTH:**

**PLAINTIFF'S ELEVENTH CAUSE OF ACTION**
*(Conspiracy to Violate The RICO Statutes*
*18 U.S.C.  § 1962(d))*

149.   Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

150.   That, within the time period alleged herein,  the Defendants, and each of them,  agreed to conduct and participate in the conduct of the affairs of the enterprise, directly and indirectly, through a pattern of racketeering activity, as that term is defined in [18 U.S.C. § 1961], said

racketeering activity consisting of multiple acts involving mail fraud (18 U.S.C.A. § 1341), wire fraud (18 U.S.C.A. § 1343) and money laundering (18. U.S.C.A § 1957), all of which are indictable offenses under federal and state law.

151.   That, the Defendants, and each of them,  had knowledge of the conspiracy and that it extended beyond their individual roles and/ or knowingly agreed to committing the aforesaid overt acts in furtherance of their conspiracy, i.e., the Racketeering Acts, herein described, in that they took steps to transfer stolen moneys out from the jurisdiction of this court to be secreted in their respective bank accounts abroad, and  agreed to an overall objective of the conspiracy knowing that other persons were conspiring to participate in the same enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961 – 1968.

152.   That, as a result of the foregoing, Plaintiff's Decedent has been injured by reason of the aforesaid violations (18 U.S.C. §§ 1962(d), his said

injuries being wholly compensable under the statute as is therein provided for.

### PLAINTIFF'S ELEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (*Appointment of a receiver*)

153.        Plaintiff repeats and reiterates each and every one of the foregoing allegations, incorporating them by reference in the following cause of action herein with the same force and effect as through set out at length.

154.   That, in light of the foregoing, a receiver of the assets of the Defendants should be appointed to prevent any dissipation thereof pending the outcome of this action.

WHEREFORE, Plaintiff prays that he be granted judgment against the Defendants, jointly and severally, on each of the causes of action herein for actual, compensatory and punitive damages as may be provided for at common law and by statute in an amount to be determined by the trier of the

facts, but not less than $12,000,000.00, together with an assessment for attorney's fees, costs and interest against all Defendants herein.

## JURY DEMAND

Plaintiff demands trial by jury on all issues in this action.

Dated,   Brooklyn, New York
      August 9, 2013

         LAW OFFICES OF SOLOMON E. ANTAR

         By,

         /S/   Solomon E. Antar

         _____
         SOLOMON E. ANTAR, ESQ.  (SEA-7804)
         Office & P.O. Address
         146 Spencer Street, Suite 4004
         Brooklyn, N.Y. 11205
         Tel.  1-212-388-0900
         Fax. 1-718-504-6138
         solomon.antar@gmail.com

         *Attorneys for Plaintiff*