# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **HON. CAROL EDMEAD** PART _35_
Justice

_Lee Odell_

INDEX NO. _108935/07_

MOTION DATE _2/29/09_

- v -

MOTION SEQ. NO. _02_

_Lefkowitz, J_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☑ **Yes** ☐ **No**

Upon the foregoing papers, it is ordered that this motion

In accordance with the accompanying Memorandum Decision, it is hereby

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's first, fifth, and sixth causes of action for failure to state a cause of action, and the first cause of action as time-barred, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's eighth cause of action for failure to state a cause of action is denied as moot; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's claims for punitive damages is granted, and such claims are dismissed; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants pursuant to CPLR 3024, to strike certain allegations in the complaint as scandalous and irrelevant material, is denied; and it is further

Page 1 of 2

Dated: _____ _____
J.S.C.

Check one: **FINAL DISPOSITION** **NON-FINAL DISPOSITION**

Check if appropriate: **DO NOT POST**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

ORDERED that the branch of the motion by the Lefkowitz defendants to compel the plaintiff to amend its Complaint to assert a more definite statement of its claims is granted solely to the extent that within 20 days of service of this order with notice of entry, plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action; and it is further

ORDERED that the cross-motion by Maskil dismiss the complaint in its entirety as asserted against him, on the ground that the claims fail to state a cause of action and are barred by the statute of limitations is denied, except that the punitive damages claims are dismissed; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Page 2 of 2

FILED

MAY 1 3 2009

COUNTY CLERK'S OFFICE
NEW YORK

Dated 5/11/09                    ENTER: _____ J.S.C.
                                 HON. CAROL EDMEAD

Check one: ❑ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:   ❑ DO NOT POST   ❑ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 35
-----------------------------------------------------------------X
LEE ODELL REAL ESTATE, INC.,                           Index No. 108939/2007

                              Plaintiff,               Sequence No. 002

          -against-

JACK LEFKOWITZ, BLUMA LEFKOWITZ
and MASKIL EL-DAL,

                              Defendants.
----------------------------------------------------------------- X

HON. CAROL EDMEAD, J.S.C.

## MEMORANDUM DECISION

Plaintiff Lee Odell Real Estate, Inc. ("plaintiff"), a judgment creditor of defendant Jack

Lefkowitz ("Jack"), commenced this action against defendants Jack and Bluma Lefkowitz

("Bluma") (collectively, the "Lefkowitz defendants") and Maskil El-Dal ("Maskil") alleging

fraud (first cause of action) and fraudulent conveyances in violation of Debtor and Creditor Law

§§273 and 273-a (second, third, fourth, fifth, seventh, and eighth causes of action), and seeking a

judgment directing that the land and improvements thereon owned by Bluma be sold in order to

satisfy plaintiff's judgment.

The Lefkowitz defendants now move to dismiss (1) the plaintiff's first, fifth, sixth and

eighth causes of action for failure to state a cause of action (CPLR 3211(a)(7), (2) the first cause

of action as time-barred (CPLR 3211(a)(5)), and (3) certain allegations in the complaint as

scandalous and irrelevant pursuant to CPLR 3024. In the alternative, the Lefkowitz defendants

move to compel the plaintiff to serve an Amended Complaint with a more definite statement of

its claims.

By cross-motion, Maskil moves to dismiss the complaint in its entirety as asserted against

him, on the ground that the claims fail to state a cause of action and are barred by the statute of limitations.

### Factual Background

According to the Complaint, plaintiff sued Jack in 1998 to recover a brokerage commission relating to the acquisition of certain real property in Manhattan (the "lawsuit"). Following a bench trial, in August, 2002 plaintiff obtained a judgment against Jack for approximately $671,000.00 (the "Judgment"). Except for approximately $34,000.00 in credits *via* payments received pursuant to restraining notices, the Judgment remains unpaid.

Maskil is a religious corporation registered in Brooklyn, New York. During 1998 through 2001, Maskil had been operated by the Lefkowitz defendants and used as a vehicle to shield and launder Jack's income and assets, while Jack was a defendant in the lawsuit. In December 1997, Maskil acquired real property in Brooklyn (the "Brooklyn home"), without court permission. The Brooklyn home was renovated, and the Lefkowitz defendants moved in, making the Brooklyn home their primary residence. By 2001, Jack dominated Maskil, using it for his personal purposes and transferring into it personal assets and personal income. In June 2001, Maskil deeded the Brooklyn home to Bluma, without court permission, and either without consideration or below market value (the "2001 Brooklyn home conveyance"). Bluma then mortgaged the home, and subsequently borrowed funds against the Brooklyn home.

Bluma claims that she does not know what happened to those funds. However, in 2006, Bluma purchased another single-family home in Brooklyn for $700,000, and later sold it in early 2008. Bluma also acquired a condominium in Manhattan for $2.6 million in 2006, and recently sold it for profit in late 2007. Bluma recently transferred the Brooklyn home to herself and

2

"Tova Greenbaum." Maskil has made numerous other real estate transactions from 1998 to the present. Bluma and Maskil have deposits outstanding on other condominium units and are involved in other potential real estate transactions. All of the above transactions were conducted at Jack's direction.

After the Judgment, Jack and Bluma were deposed in 2002 concerning their assets. Jack testified that he was not a member of any partnership or limited liability company, had no income in 1999 and 2000, and that no one owed him any money. However, Jack owned all or a majority of the ownership units of New York Medscan, LLC (a medical imaging business), and was its managing member. Jack was also a member of other limited liability companies, and had income in 1999 and 2000. Jack personally guaranteed a portion of the equipment leases from "GE Capital" to Medscan. Jack represented to GE Capital that he was a managing member of Medscan, signed financial and court documents from 2001 through 2004 as "Managing Member" and held himself out as "owner" of Medscan. Further, Jack obtained a $615,000 judgment in 1999 and continued to attempt to collect that judgment until recently, when the holder of another judgment against him was able to force the judicial sale of said judgment in order to satisfy Jack's obligations to that creditor.

Bluma also testified at an asset deposition, wherein she stated that she did not have any knowledge of anyone other than herself, who has had any involvement with Maskil. However, she was aware of Jack's total control of Maskil.

After plaintiff discovered Jack's ownership interest in Medscan in 2006, Jack allegedly transferred his interest in Medscan to Bluma and/or an entity known as Barclay Dwyer, which was then wholly-owned by Bluma, without fair consideration (the "2006 Medscan conveyance").

3

This action for fraud and fraudulent conveyance ensued.

The Lefkowitz Defendants' Motion

The Lefkowitz defendants argue that the fraud cause of action fails to plead fraud with the required specificity pursuant to CPLR 3016(b). The Complaint refers to two transactions, the Brooklyn home and the Medscan matter. However, Jack did not hold title to the Brooklyn home, and the transaction took place more than six years ago, rendering this claim time-barred. As to the Medscan matter, plaintiff failed to set forth any basis, other than speculation and mere suspicion, for Jack's alleged ownership and/or transfer of any interest in Medscan. The remaining allegations of "other" transactions lack specificity.

As to the first cause of action, the Lefkowitz defendants contend that the Brooklyn home was conveyed on "July 21, 2001." Thus, this action, commenced on June 27, 2007 beyond the six-year statute of limitations, is time-barred and should be dismissed pursuant to CPLR 3211(a)(5). In any event, since Jack did not have an interest in the Brooklyn home, the provisions of the Debtor and Creditor are inapplicable. Finally, since there is no civil cause of action for conspiracy, the "conspiracy to defraud" allegation in the first cause of action must be dismissed, pursuant to CPLR 3211(a)(7).

The fifth cause of action fails to make any reference to any particular section of the Debtor and Creditor Law, and fails to give the Lefkowitz defendants notice of the legal basis for the proposed claim. Therefore, the fifth cause of action should be dismissed pursuant to CPLR 3211(a)(7).

The sixth cause of action to compel the sale of real property owned by Bluma fails to provide the Lefkowitz defendants with any notice as to the statutory or other basis for the

4

requested relief, and thus, fails to state a cause of action.

As there is no separate cause of action of punitive damages in New York, the eighth cause of action for an award of such damages fails to state a claim.

Further, the scandalous and prejudicial allegations in paragraphs 1-3 and 15-27 regarding the Lefkowitz's diversion and secretion of assets, and use of Jack's rabbi to plead claims of poverty on Jack's behalf should be stricken from the Complaint pursuant to CPLR 3024(b).

To the extent any portion of the Complaint is not dismissed, plaintiff should serve a more definite statement pursuant to CPLR 3024(a). The Complaint is pleaded in generalities and gives only examples of transactions forming the basis of plaintiff's claims.

Maskil's Motion

Maskil argues that the causes of action relating to Maskil are barred by the applicable statute of limitations. The only allegation in the Complaint against Maskil relates to the deeding of the Brooklyn home on "June 22, 2001," which was purchased by Maskil in December 1997 and sold to Bluma for insufficient consideration.

Moreover, the alleged fraudulent conduct was discovered more than two years prior to the commencement of this action. Plaintiff alleges that it had actual knowledge or a belief that Jack was using Maskil to shield his assets since as early as 1998, and plaintiff actively litigated against Jack and issued restraining notices from 1998 to 2002.

Further, the claim against Maskil for conspiracy fails for the reasons stated above.

And, punitive damages are only recoverable for fraud where the fraud was aimed at the general public, was gross and wanton in nature, and involved a high degree of moral culpability. The recovery afforded under the Debtor and Creditor Law is limited to nullification of the

5

conveyance, and removing property from the reach of a creditor is not misconduct so gross and wanton to justify punitive damages.

Opposition

Plaintiff points out given that the Lefkowitz defendants assert that the transfer of the Brooklyn home took place on *July* 21, 2001, the action, commenced on June 2007, is plainly within the six-year statute of limitations. Further, the Complaint's allegation that said transfer occurred on June 21, 2001, is also a typographical error; the transfer occurred on or after June 28, 2001, and the action was commenced on June 27, 2008, within the six-year statute of limitations. Plaintiff served an amended complaint, as of right, to reflect the correct date of the transfer.

Further, fraud has been sufficiently pleaded. The remedy for violating CPLR 3016(b) is to order that certain matters be repleaded. A cursory examination of the Complaint reveals that a fraud claim has been specifically plead.

In addition, since the Amended Complaint now reformats the punitive damages to include them as part of each of the first through fifth causes of action, the branch of the motion seeking to dismiss the separate punitive damage cause of action is moot. Further, as now plead, punitive damages may be recoverable from the judgment-debtor and his co-conspirator since the fraudulent transfers of assets involves conduct which could be characterized as disingenuous, contumacious, illegal, and directed at the public in light of the public benefits conferred upon Maskil by its status as a not-for-profit religious corporation. Thus, defendants' alleged conduct states a claim for punitive damages.

Furthermore, the preliminary statements found in paragraphs one through three are appropriate. The statements include allegations of specific material fact that highlight the

6

extraordinary efforts and willingness of the Lefkowitz defendants to dissemble and defraud in order to avoid the collection of a judgment. Since fraud is almost always to be inferred, it is essential for plaintiff to specify examples of cynical and outrageous conduct from which the defendants' intent may be inferred. Moreover, the allegations concerning misuse of a religious corporation for personal ends tend to support a "fraud upon the public" element.

Plaintiff argues that as to the first cause of action, the claim that Jack had no interest in the Brooklyn home does not warrant dismissal. The Complaint alleges that Jack and Maskil were alter egos of each other, and that Maskil deeded the Brooklyn home to Bluma for insufficient consideration. It necessarily follows that Maskil's property, such as the home, could have been reached by the judgment-creditor had it allegedly not been put beyond the creditor's reach by virtue of the transfer. Furthermore, New York law permits a conspiracy cause of action when attached to a particular cause of action. Plaintiff did not plead conspiracy alone, but rather a conspiracy to accomplish a fraud and fraudulent transfers, which is permissible.

Further, although the fifth cause of action does not specify a section of the Debtor and Creditor Law, it sufficiently pleads the elements of section 276 of that law. Moreover, New York law recognizes a cause of action in damages for transfers which meet the allegations set forth in the fifth cause of action.

Plaintiff also contends that the sixth cause of action is timely, as stated above, and incorporates the allegations concerning the fraudulent transfer from Jack and his alter ego, Maskil, to Bluma. The Debtor and Creditor Law provides a cause of action to set aside fraudulent transfers.

Finally, no definite statement is required.

7

Lefkowitz Defendants' Reply

The Lefkowitz defendants add that since the Amended Complaint and original Complaint are identical (except for correcting a typographical error as to the date of the Deed from Maskil to Bluma, withdrawing the eighth cause of action for punitive damages, adding punitive damages to certain causes of action) they wish to proceed with their motion as against the Amended Complaint.

The Lefkowitz defendants argue that the case cited by plaintiff confirms that there is a higher standard for a pleading alleging fraud than the standard for other pleadings in general. Plaintiff's claim that it cannot detail the fraud as the facts are peculiarly within the Lefkowitz defendants' knowledge lacks merit. Notwithstanding the opportunity to take two depositions of Jack and one deposition of Bluma, and obtain voluminous bank and other financial records, plaintiff's Amended Complaint is devoid of any specific factual allegations of fraud.

As to the first cause of action, although plaintiff asserts that Jack and Maskil were "alter egos of each other," the Amended Complaint does not seek a declaratory judgment or any other affirmative relief to that effect, or provide any support for the single, conclusory "alter ego" allegation. Plaintiff failed to allege the necessary elements to pierce the corporate veil of Maskil. Further, the cursory allegations that Jack controls Maskil are insufficient. And, as to the conspiracy to commit fraud, the Amended Complaint contains none of the hallmark allegations for fraud, such as misrepresentation, reasonable reliance, and damage. To the extent the first cause of action now claims fraud and fraudulent transfers, it should be dismissed as duplicative of plaintiff's other causes of action.

Additionally, as plaintiff's seventh cause of action also seeks relief under Section 276 of

8

the Debtor and Creditor Law, the fifth cause of action should be dismissed as duplicative.

Plaintiff has yet to set forth the specific basis for the sixth cause of action and, instead, has left the Lefkowitz defendants to guess as to the exact legal authority on which the sixth cause of action is based. As such, plaintiff's sixth cause of action should be dismissed for failure to state a cause of action.

Furthermore, the cases cited by plaintiff provide no support for its position that punitive damages are proper in this matter.

Finally, the improper personal attacks by plaintiff are neither material, nor relevant to the litigation.

### Maskil's Reply

Maskil incorporates by reference legal arguments set forth by the Lefkowitz defendants. Maskil further argues that plaintiff failed to adequately plead liability pursuant New York's general common law fraud and Debtor and Creditor Law, thus requiring dismissal of the entire complaint against Maskil.

The second, third, fourth, fifth, and seventh causes of action do not indicate how Maskil can be liable under the respective provisions of the Debtor and Creditor Law. Maskil was not a party to the underlying judgment and therefore, the real property could not have been conveyed "when the person making it is a defendant in an action for money damages or a judgment" under Debtor and Creditor Law § 273-a.

Similarly, Jack Lefkowitz was not a party to the purchase and sale of the property and therefore, the conveyances could not have been made "by a person who is or will be thereby rendered insolvent," under Debtor and Creditor Law § 273, or by a person with actual intent to

9

hinder, delay, or defraud a creditor, under Debtor and Creditor Law § 276. Since plaintiff has not adequately pled liability pursuant to Debtor and Creditor Law § 276, then it also cannot recover attorneys' fees under Debtor and Creditor Law § 276-a.

Maskil argues that the allegations on information and belief that Jack totally dominated Maskil such that each has become the alter ego of the other, and that Jack used Maskil for transferring into it personal assets and income are insufficient to sustain a cause of action against Maskil. Nowhere does plaintiff indicate how Jack dominated and controlled Maskil specifically as to the purchase and sale of the property, or how that specific control was used to defraud plaintiff to its detriment.

Finally, plaintiff's failure to plead at a minimum a *prima facie* case against Maskil pursuant to the statutory cause of action for a fraudulent conveyance demonstrates that they have not pled its first cause of action for common law fraud with any particularity.

<u>Analysis</u>

In determining a motion to dismiss pursuant to CPLR §3211(a)(7), the court's role is ordinarily limited to determining whether the complaint states a cause of action *(Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 741 NYS2d 9 [1st Dept 2002]). The standard on a motion to dismiss a pleading for failure to state a cause of action is not whether the party has artfully drafted the pleading, but whether deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained (*see Stendig, Inc. v Thorn Rock Realty Co.*, 163 AD2d 46 [1st Dept 1990]; *Leviton Mfg. Co., Inc. v Blumberg*, 242 AD2d 205, 660NYS2d 726 [1st Dept 1997] [on a motion for dismissal for failure to state a cause of action, the court must accept factual allegations as true]). When considering a motion to

10

dismiss for failure to state a cause of action, the pleadings must be liberally construed (*see* CPLR §3026), and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit into any cognizable legal theory" (*Nonnon v City of New York*, 9 NY3d 825 [2007]; *Leon v Martinez*, 84 NY2d at 87-88). However, in those circumstances where the bare legal conclusions and factual allegations are "flatly contradicted by documentary evidence," they are not presumed to be true or accorded every favorable inference [*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81, 692 NYS2d 304 [1st Dept 1999], *affd* 94 NY2d 659, 709 NYS2d 861 [2000]); and the criterion becomes "whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275, 401 NYS2d 182 [1977]; *see also Leon v Martinez*, *supra*]; *Ark Bryant Park Corp. v Bryant Park Restoration Corp.*, 285 AD2d 143, 150, 730 NYS2d 48 [1st Dept 2001]).

First Cause of Action Against the Lefkowitz Defendants

The first cause of action seeks to set aside the 2001 Brooklyn home conveyance to Bluma, on the ground that defendants "conspired to defraud the creditors of Lefkowtiz and to render noncollectable the judgment held by plaintiff against Lefkowitz." Such cause of action is not barred by the Statute of Limitations. It is uncontested that the six-year statute of limitations under CPLR §213(8) applies to the first cause of action.[1] As plaintiff points out, even accepting as true the contention by the Lefkowitz defendants that the Brooklyn home conveyance occurred

---

[1] CPLR §213(8) provides as follows:
In an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

11

on *July* 21, 2001, the action, commenced on June 2007, is timely. Moreover, plaintiff's submissions establish that said conveyance occurred on or after June 28, 2001, (and not on June 21 as the Complaint alleges), and thus, the action was timely commenced on June 27, 2008, a day before the expiration of the six-year statute of limitations.[2]

Nor can it be said that the first cause of action fails to state a cause of action for conspiracy to defraud Jack's creditors. Although Jack did not have an "interest" in the 2001 Brooklyn home conveyance between Maskil and Bluma, plaintiff claims that Jack was the alter ego of Maskil, and controlled Maskil's assets to the extent of diverting its assets to avoid the possibility of its assets being used to satisfy the Judgment against Jack.

*Sweeney, Cohn, Stahl & Vaccaro v Kane* (6 AD3d 72, 773 NYS2d 420 [2d Dept 2004]) is instructive. In *Sweeney*, Amy Kane and her husband George Kane incorporated the defendant Gin Properties, Inc., as a subchapter S corporation in Florida in June 1994. The Kanes entered into a contract to buy a house located at 73 Gin Lane in Southampton, New York. After title closed, Gin Properties, Inc. became the owner of 73 Gin Lane, the principal residence of the Kanes. Thereafter, the plaintiff law firm, on behalf of Mrs. Kane, negotiated a settlement between Mrs. Kane and her prior law firm in October 1994 in connection with an action in Surrogate's Court, wherein she agreed to pay $13,000 in full discharge of her fee obligation to the prior law firm. When Amy Kane failed to pay the $13,000 attorney's fee in accordance with the stipulation, her prior law firm obtained a judgment dated March 8, 1995, for that amount. Shortly thereafter, the plaintiff law firm sued Amy Kane for the balance due on its retainer, and obtained a judgment on February 28, 1996 against Amy Kane for $5,049.93. During the course

---

[2] The amended complaint reflects the alleged correct date of the transfer as June 27, 2001.

of their efforts, both law firms discovered Gin Properties, Inc.  The plaintiffs commenced the action on the theory that Gin Properties, Inc. was the alter ego of the Kane defendants and that its property should be sold to pay the plaintiffs' judgments.

The Court found that the Kanes "utterly dominate[d] Gin Properties, Inc., and they formed it to protect assets from claims of creditors such as the plaintiffs, thereby, in effect, defrauding them." They paid the real property taxes and mortgage principal and interest for 73 Gin Lane, *in which they reside*, took income tax deductions on their own tax returns for the interest and taxes. *They were in complete control of the real property, improved it with their own funds*, including the addition of a home entertainment theater and putting green. Although expenses for these purposes and for the Kanes' family, such as college expenses, were paid by corporate checks, these were fed by loans made by the Kanes to Gin Properties, Inc. *Such domination makes Gin Properties, Inc.* (named for the road on which their Suffolk County home is located), *an alter ego of the Kane defendants*. Therefore, its property is subject to the claims of their creditors. Piercing the corporate veil is an equitable concept that allows a creditor to disregard a corporation and hold its controlling shareholders personally liable for the corporate debt. Reverse-piercing flows in the opposite direction and makes the corporation liable for the debt of the shareholders. The Court further found that since "George Kane . . . was a driving force behind the scheme to avoid Amy Kane's creditors, and he benefitted as much as she did from using the corporate form for personal purposes, gaining income tax and habitat advantages, the conclusion is ineluctable that the Kanes were acting in concert."

This case illustrates the sustainability of the first cause of action, even though Jack was neither a party to nor had an "interest" in the Brooklyn home. Although general and conclusory

13

allegations that non-debtor co-conspirators (*i.e.*, Bluma and Maskil) somehow participated in a scheme to defraud, without identifying affirmative representations upon which the creditors relied, are insufficient to sustain such a cause of action (*see Gallant v Kanterman*, 198 AD2d 76, 603 NYS2d 315 [1st Dept 1993]), the Complaint alleges that Jack and Maskil were alter egos of each other, that Maskil deeded the Brooklyn home to Bluma for insufficient consideration, who then borrowed funds against the Brooklyn home. The borrowed funds allegedly disappeared. It is alleged that the property of Maskil, Jack's alleged alter ego, such as the home, could have been reached by the judgment-creditor had it allegedly not been put beyond the creditor's reach by virtue of the transfer. It is also alleged that the Medscan property, which was under the control of Jack, was transferred to Bluma or an entity then wholly-owned by Bluma, without fair consideration As the Kanes, the Lefkowitz defendants herein allegedly were acting in concert (*see PalmOne, Inc. v R.C.S. Computer Experience, L.L.C.*, 15 Misc 3d 1127, 841 NYS2d 220 [Sup Ct 2007] [where defendants failed to establish their entitlement to dismissal of plaintiff's causes of action premised upon the Debtor and Creditor Law's fraudulent conveyance provisions, they also failed to establish their entitlement to dismissal of the conspiracy cause of action ]). Therefore, the first cause of action is sufficiently stated against the Lefkowitz defendants.

Fifth Cause of Action Against the Lefkowitz Defendants

The fifth cause of action incorporates the allegations in the previous portions of the Complaint and alleges that the Lefkowitz defendants and Maskil made the 2001 Brooklyn home and 2006 Medscan conveyances "with actual intent to hinder, delay and/or defraud the present and future creditors of [Jack] Lefkowitz, including plaintiff." It further alleges that as "a direct result of the conveyances, plaintiff was injured, for which defendants are liable, pursuant to

14

Debtor and Creditor law, in an amount that it is undetermined but at a minimum is the amount of

the Judgment. . . ." Although, as the Lefkowitz defendants contend, this cause of action fails to

make any reference to any particular section of the Debtor and Creditor Law, plaintiff contends

that it pleads the elements of section 276. Debtor and Creditor Law § 276 provides that "Every

conveyance made and every obligation incurred with actual intent, as distinguished from intent

presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to

both present and future creditors." Here, the Complaint alleges circumstances surrounding the

purchase of certain additional property, including that under Jack's control and with Jack's

knowledge of potential liability to creditors such as the plaintiff, Bluma obtained a mortgage loan

against the Brooklyn home, and did not know where the funds were, but that some time

thereafter, she purchased another home in Brooklyn, followed by a home in Manhattan. Such

allegations are sufficient to plead a fraudulent conveyance under Debtor and Creditor Law § 276

(*see Nonas v Romantini*, 271 AD2d 292, 706 NYS2d 109 [1st Dept 2000] [third cause of action

reinstated, finding "Badges of fraud permitting an inference of fraudulent intent include the close

relationship between Feder and Fleisher, in that their owners were husband and wife; the

apparently nominal consideration that Fleisher gave for Feder, in that the former was only to pay

off the latter's creditors of which there were apparently none; husband's alleged control over the

transferred property after the transfer; and, as already indicated, the alleged incipiency of the

obligation owing to plaintiffs' and husband's knowledge thereof]).

Contrary to the Lefkowitz defendants' contention, plaintiff's fifth cause of action is not

duplicative of the seventh cause of action. The seventh cause of action seeks relief under Section

276-a of the Debtor and Creditor Law, which provides that "In an action . . . brought by a creditor

15

. . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors, in which action . . . the creditor . . . shall recover judgment, the justice . . . presiding at the trial shall fix the reasonable attorney's fees of the creditor . . . and the creditor . . . shall have judgment therefor against the debtor and the transferee who are defendants *in addition to* the other relief granted by the judgment." (Emphasis added). The seventh cause of action alleges that the 2001 Brooklyn home and 2006 Medscan conveyances "referred above were made with the actual intent to hinder, delay and/or defraud plaintiff," and that plaintiff is entitled to recover attorneys's fees pursuant to Debtor and Creditor Law § 276-a. The Seventh cause of action seeks legal fees under 276-a, whereas plaintiff's fifth cause of action seeks damages under 276. Therefore, the fifth cause of action is not duplicative of the seventh cause of action.

Therefore, the application to dismiss the fifth cause of action pursuant to CPLR 3211(a)(7) is denied.

Sixth Cause of Action Against the Lefkowitz Defendants

The sixth cause of action incorporates the allegations contained in the preceding paragraphs, but seeks a judgment that "the land with buildings and improvements owned by Bluma Lefkowitz described above be sold and that the money sufficient to satisfy the Judgment . . . be paid over to plaintiff . . . ." Caselaw permits a judgment creditor to seek the sale of the fraudulent conveyed property in order to satisfy a judgment in its favor (*see National Enterprises, Inc. v Clermont Farm Corp.*, 46 AD3d 1180, 848 NYS2d 420 [3d Dept 2007] [holding that the "Supreme Court properly determined that Property I was fraudulently conveyed to Clermont II

16

and directed sale of that parcel to satisfy petitioner's judgment"]).   Therefore, the application to

dismiss the sixth cause of action is denied.

<u>Eighth Cause of Action Against the Lefkowitz Defendants</u>

The eighth cause of action for punitive damages was essentially withdrawn as a separate

cause of action.  Therefore, dismissal of the eighth cause of action is denied as moot.  However,

to the extent that plaintiff added a claim for punitive damages to the remaining causes of action,

such claim is dismissed.  "The creditor's remedy in a fraudulent conveyance action is limited to

reaching the property which would have been available to satisfy the judgment had there been no

conveyance" (*Marine Midland Bank v Murkoff*, 120 AD2d 122, 132, 508 NYS2d 17; *appeal*

*dismissed*, 69 NY2d 875, 514 NYS2d 1029); *see*, Debtor and Creditor Law §§ 278, 279).  A

creditor's remedy for the transfer of its debtor's assets, "where undertaken prior to a judgment on

the debt, is to obtain a nullification of the conveyance (*see*, § 279) and, where undertaken after

judgment, additionally to secure the assets in satisfaction of the debt" (*see*, § 278) *(Federal*

*Deposit Ins. Corp. v Porco*, 75 NY2d 840 [1990]).  The statutory remedies available for the

conveyance of property to remove it from the reach of a potential judgment creditor are limited to

placing the parties in *status quo ante* (*Blakeslee v Rabinor*, 182 AD2d 390, 582 NYS2d 132 [1st

Dept 1992] *citing* Debtor and Creditor Law § 279 and *Marine Midland Bank v Murkoff, supra*).

Here, the alleged conduct of the Lefkowitz defendants and Maskil herein, in allegedly

attempting to place assets under the control of Jack outside the reach of his creditors, *without*

*more*, does not constitute sufficient moral culpability to support the award of punitive damages

(*see Blakeslee v Rabinor*, 182 AD2d 390, 582 NYS2d 132 [1ˢᵗ Dept 1992]).  Therefore, the

Lefkowitz defendants' application to dismiss the punitive damage claims in the Amended

17

Complaint is granted.

### Motion by the Lefkowitz Defendants for Definite Statement

CPLR 3024(a) applies to vague or ambiguous pleadings, and provides that "If a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a response he may move for a more definite statement." Where it appears that the complaint alleges various causes of action and that the matter contained therein is indefinite, the court, in the exercise of its discretion, may require the service of an amended pleading as the case may require (*Bradford v 27 East 38th St. Realty Corp.*, 4 AD2d 830, 166 NYS2d 432 [1st Dept 1957]). Except for the fifth cause of action which fails to set forth the Debtor and Creditor Law section under which such claim is brought, the balance of the complaint sufficiently alleges the parties to the alleged fraudulent conveyances, the approximate dates and years, the nature and identity of the property in question, and the relief sought. Therefore, the alternate request that plaintiff be compelled to amend its complaint to assert a more definite statement is granted solely to the extent that plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action.

### Scandalous Material

The test under CPLR 3024 to strike scandalous or prejudicial material is whether allegation is relevant, in evidentiary sense, to the controversy and, therefore, admissible at trial. *Wegman v Dairylea Co-op., Inc.* 50 AD2d 108, 376 NYS2d 728 [4th Dept 1975] , appeal dismissed 38 NY2d 710, 382 NYS2d 1030, appeal dismissed 38 NY2d 918, 382 NYS2d 979; *see also, Soumayah v Minnelli*, 41 AD3d 390, 839 NYS2d [1st Dept 2007] [In reviewing a motion to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading, the inquiry is

18

whether purportedly scandalous or prejudicial allegations are relevant to a cause of action];
*Shenandoah v Hill*, 9 Misc 3d 548, 799 NYS2d 892, *affd. as mod.* 28 AD3d 919, 815 NYS2d
290 [ 2005] [The standard for evaluating whether pleadings are so scandalous or unnecessary as
to warrant being stricken is measured by whether material would be admissible at trial]).

The first four paragraphs are essentially a summary of plaintiff's allegations in support of
its fraudulent conveyance claims against the defendants. Whether the allegations surrounding
Jack's use of a Rabbi to solicit donations on Jack's behalf because Jack was "broke" is neither
irrelevant nor scandalous, but is relevant to the picture Jack and Bluma paints at their alleged
depositions that Jack has insufficient income to fully satisfy his creditors. Therefore, the branch
of the motion to strike these portions of the complaint pursuant to CPLR 3024 is denied.

Cross-Motion to Dismiss by Maskil

Maskil's argument that each of the causes of action relating to it are barred by the
applicable statute of limitations, based on the deeding of the Brooklyn home on "June 22, 2001,"
lacks merit, in light of the record indicating that said transfer occurred on or about June 28, 2001.

Further, Maskil's argument that the conspiracy claim fails also lacks merit, for the
reasons stated above. Additionally, contrary to Maskil's contentions, the allegations in the
complaint are sufficiently specific as to the parties involved, the nature and identity of the
allegedly fraudulent conveyed property, and the periods during which such transactions took
place. The court will not dismiss the complaint on a pre-answer motion to dismiss and deprive
plaintiff of the opportunity to engage in discovery on the matter (*see Contractors Cas. and Sur.
Co. v. I.E.A. Elec. Group, Inc.*, 181 Misc 2d 469, 693 NYS2d 915 [Sup Ct New York County
1999]).

19

However, Maskil's request for dismissal of the punitive damages claims on the ground that they are unwarranted in this case, is granted, for the reasons noted above.

Conclusion

Based on the foregoing, it is hereby

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's first, fifth, and sixth causes of action for failure to state a cause of action, and the first cause of action as time-barred, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's eighth cause of action for failure to state a cause of action is denied as moot; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to dismiss the plaintiff's claims for punitive damages is granted, and such claims are dismissed; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants pursuant to CPLR 3024, to strike certain allegations in the complaint as scandalous and irrelevant material, is denied; and it is further

ORDERED that the branch of the motion by the Lefkowitz defendants to compel the plaintiff to amend its Complaint to assert a more definite statement of its claims is granted solely to the extent that within 20 days of service of this order with notice of entry, plaintiff shall identify the section of the Debtor and Creditor Law under which it seeks relief in the fifth cause of action; and it is further

ORDERED that the cross-motion by Maskil dismiss the complaint in its entirety as asserted against him, on the ground that the claims fail to state a cause of action and are barred by

20

the statute of limitations is denied, except that the punitive damages claims are dismissed; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Dated: May 11, 2009

Hon. Carol Robinson Edmead, J.S.C.

**HON. CAROL EDMEAD**

FILED

MAY 13 2009

COUNTY CLERK'S OFFICE
NEW YORK

21